[No. 57610-6. En Banc. May 14, 1992.]

LUTHERAN DAY CARE, *Appellant*, v. SNOHOMISH COUNTY,
ET AL, *Respondents*.

92

94

*Sally M. Hyde, Gregory L. Bertram,* and *Bertram & Hyde, P.C.,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Carol J. Weibel, Deputy,* for respondents.

BRACHTENBACH, J. — This land use case involves the following issues:

1. Does RCW 64.40.020 abolish municipal quasi-judicial immunity for certain land use decisions as described in that statute? Yes.

2. Does the doctrine of collateral estoppel apply against the County in this damages action wherein the trial court in a prior hearing held the County's actions to be arbitrary and capricious? Yes.

3. Does plaintiff have a cause of action under 42 U.S.C. § 1983? Yes.

4. Does plaintiff have a state tort action for intentional interference with a business expectancy? No.

5. Is plaintiff entitled to attorney fees under RCW 64.40-.020(2) and 42 U.S.C. § 1988? Yes.

This action for damages arises from the protracted efforts of a property owner, Lutheran Day Care (appellant), to obtain a conditional use permit to build a "rest home" on its property. After denial of its first application by the hearing examiner, appellant submitted a second application. After denial of the second application by the hearing examiner, affirmed by the Snohomish County Council, the Snohomish County Superior Court held the denial was erroneous as a matter of law. On appeal, Division One of the Court of Appeals affirmed. *Lutheran Day-Care v. Snohomish Cy.,* noted at 50 Wn. App. 1058 (1988).

Yet another application was then denied by the hearing examiner and, again, the hearing examiner's decision was

affirmed by the county council. Appellant then filed a complaint in the Superior Court, naming Snohomish County (County), the Snohomish County Council (county council), and the Snohomish County Hearing Examiner (hearing examiner) as defendants. This complaint stated two causes of action, one requesting the court to issue a writ of certiorari and order requiring that the permit be issued, and the other requesting damages, under RCW 64.40, as a remedy for the arbitrary and capricious conduct of the hearing examiner and the county council members. The complaint was later amended to include a third cause of action for tortious interference with a business expectancy and a fourth cause of action for violation of civil rights under 42 U.S.C. § 1983.

Judge Thibodeau of the Snohomish County Superior Court issued a writ of certiorari to review the most recent decision not to grant the permit. Judge Kershner heard the case (the second superior court hearing to this point) and held that there was no factual basis for the hearing examiner's conclusions, nor was "there reference to standards, if any, that support the Examiner's decision." Order on Writ of Certiorari; Clerk's Papers of Plaintiff, at 303. The Superior Court therefore remanded the matter to the hearing examiner for detailed findings of fact and identification of the standards being applied. The hearing examiner, without further hearing, filed supplemental findings of fact and conclusions in support of denial.

Upon review of this action, Judge Kershner held

[the] findings and conclusions by the Hearing Examiner constitute wilful and unreasonable action without consideration and in disregard of the relevant facts and circumstances. The denial of the Conditional Use Permit on these grounds is arbitrary, capricious and unlawful.

Clerk's Papers of Plaintiff, at 304. He therefore ordered the immediate issuance of the permit. The County did not appeal this holding and the permit was issued.

Thus, the Superior Court has held relative to the denial of appellant's conditional use permit: (1) that the second denial was erroneous as a matter of law (affirmed by the Court of Appeals), (2) that the third decision of the hearing examiner was without factual basis and without identifiable standards, and (3) that the findings and conclusions ultimately made constituted willful and unreasonable action and thus were arbitrary, capricious and unlawful.

Following Judge Kershner's decision in the certiorari proceeding, defendants moved for summary judgment dismissal of appellant's three remaining causes of action for damages. Appellant also moved for summary judgment, seeking to establish defendants' liability under the second and fourth causes of action (RCW 64.40; 42 U.S.C. § 1983). Judge Thibodeau granted summary judgment for defendants on all three causes of action. The court held that appellant's causes of action under RCW 64.40 and for tortious interference must fail because the actions of the hearing examiner and county council in denying the conditional use permit were quasi judicial and therefore protected by quasi-judicial immunity. Even if they were not, the court concluded, appellant failed to meet the statutory requirements of RCW 64.40. Further, the court held that, as to the § 1983 claim, appellant "has not shown that the denial [of the permit] was made with 'purposeful discrimination or at least an allegation that the misdeeds were knowing or reckless.' " Clerk's Papers of Plaintiff, at 16.

We accepted certification of the appeal (RCW 2.06.030(d)) and now reverse.

## I
### RCW 64.40.020

■ This is an "official capacity" lawsuit. In other words, appellant is suing only the County; the hearing examiner and individual county council members have been named defendants only in their official capacities as representatives of the County. This aspect of the case is important because appellant relies on RCW 64.40.020 for its recovery and that statute only creates liability for an "agency" such

as the County. RCW 64.40.020(1), .010(1). The statute does not purport to address the liability of individual governmental officials and we, therefore, do not address any question of the individual officials' liability.

RCW 64.40.020 provides:

> (1) Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority . . . *Provided*, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.
>
> (2) The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees.
>
> (3) No cause of action is created for relief from unintentional procedural or ministerial errors of an agency.
>
> (4) Invalidation of any regulation in effect prior to the date an application for a permit is filed with the agency shall not constitute a cause of action under this chapter.

Appellant alleges that the hearing examiner and the county council acted in an "arbitrary, capricious, [and] unlawful" manner when they denied appellant its conditional use permit and that therefore the County, as the relevant "agency", is clearly liable under RCW 64.40.020(1). The trial court, however, concluded that the county council and the hearing examiner were protected by quasi-judicial immunity. It concluded that RCW 64.40.020 did not evidence sufficient legislative intent to change the common law rule of immunity and therefore ruled that the County could not be liable under the statute.

Quasi-judicial immunity attaches to persons or entities who perform functions that are so comparable to those performed by judges that it is felt they should share the judge's absolute immunity while carrying out those functions. *See Butz v. Economou*, 438 U.S. 478, 512-14, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978). Thus, quasi-judicial immunity is absolute. *Babcock v. State*, 116 Wn.2d 596, 606-08, 809 P.2d 143 (1991). It should be made clear, however, that such

immunity is not to be confused with absolute *judicial* immunity. The phrase "quasi judicial" employs the word "judicial" only in comparing the *function* of a nonjudicial person or entity to the functions of a judge. True judicial immunity of judges and of those to whom courts have accorded extended judicial immunity are not here involved.

The trial court relied for its conclusion that quasi-judicial immunity applies in this case on a number of Court of Appeals opinions and a footnote in one opinion of this court which seem to indicate that absolute quasi-judicial immunity is available. *See Pleas v. Seattle*, 112 Wn.2d 794, 805 n.1, 774 P.2d 1158 (1989); *Layne v. Hyde*, 54 Wn. App. 125, 773 P.2d 83, *review denied*, 113 Wn.2d 1016 (1989); *Grader v. Lynnwood*, 53 Wn. App. 431, 442, 767 P.2d 952, *review denied*, 113 Wn.2d 1001, *cert. denied*, 493 U.S. 894, 107 L. Ed. 2d 193, 110 S. Ct. 243, *reh'g denied*, 493 U.S. 986 (1989); *Jensen v. Torr*, 44 Wn. App. 207, 213, 721 P.2d 992, *review denied*, 107 Wn.2d 1004 (1986); *Rayburn v. Seattle*, 42 Wn. App. 163, 709 P.2d 399 (1985), *review denied*, 105 Wn.2d 1007 (1986).

We note that these cases, where they contain any analysis of the issue at all, have generally based their holdings on conclusory citation of authority and not on the detailed policy-oriented factual inquiry which we will later show is necessary to decide the immunity question. "When a governmental action is characterized as 'legislative' or 'adjudicative,' there is the risk that the characterization will be carried beyond the specific issue being decided." *Strawberry Hill 4 Wheelers v. Board of Comm'rs*, 287 Or. 591, 602, 601 P.2d 769 (1979). Thus, strict reliance on case law to determine the extent of immunity carries the risk of finding immunity based on the fact that the function being performed has been characterized as "quasi judicial" in a prior case which may have concerned entirely different issues and in which the court did not have reason to consider the policy implications of absolute immunity. Such reliance also carries with it the risk of finding immunity based on analogy to a case where the title held by the relevant official is

the same as the one at issue, but the functions, procedures, and inherent protections available are quite different.

However, since both parties have assumed that absolute quasi-judicial immunity would apply in the absence of RCW 64.40.020, we do not decide the issue of whether it should. Decision of that issue must await adequate briefing. We therefore assume that absolute quasi-judicial immunity does protect the hearing examiner and county council members and we base our analysis of the statute on that assumption.

Under *Creelman v. Svenning*, 67 Wn.2d 882, 885, 410 P.2d 606 (1966), a city, county, or state which employs an officer also enjoys the quasi-judicial immunity of that officer for the acts of that officer. *Cf. Guffey v. State*, 103 Wn.2d 144, 153, 690 P.2d 1163 (1984) (municipality enjoys the qualified immunity of its police officers). *But cf. Babcock v. State*, *supra* at 619-22 (State does not enjoy the immunity of its Department of Social and Health Services caseworkers). Contrary to the trial court's analysis, the issue in this case is not whether RCW 64.40.020 was intended to change the rule of individual officer immunity, but whether it was intended to change the *Creelman* rule of imputed municipal immunity. This is because, as explained earlier, RCW 64.40-.020 only creates a cause of action against an "agency". Agency is defined in RCW 64.40.010(1) as "the state of Washington, any of its political subdivisions, including any city, town, or county, and any other public body exercising regulatory authority or control over the use of real property in the state." The statute therefore *does not* create a cause of action against individual members of an agency, but only against the agency itself. Appellant has implicitly accepted this fact by noting that this suit is against the County, not against the hearing examiner or county council members in their individual capacities. Brief of Appellant, at 2-3.

The County nevertheless argues that RCW 64.40.020 cannot be interpreted to change the rule of absolute quasi-judicial immunity unless it does so explicitly, since statutes in derogation of common law are to be strictly construed. *Green Mt. Sch. Dist. 103 v. Durkee*, 56 Wn.2d 154, 160-61,

351 P.2d 525 (1960); *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887-88, 652 P.2d 948 (1982). According to the County, since RCW 64.40.020 contains no express abrogation of quasi-judicial immunity, the immunity must still be in place.

While we have in the past relied on the rule that statutes in derogation of the common law must be strictly construed, *see, e.g., Green Mt. Sch. Dist. 103 v. Durkee, supra*, that rule has come under an increasing amount of criticism. "If the rule is viewed as a presumption against change of the common law . . . then in most cases it contradicts legislative purpose" in that the Legislature's purpose in enacting most laws is to remedy perceived defects in the common law. 3 N. Singer, *Statutory Construction* § 61.04 (4th ed. 1986). Thus, the mere fact that RCW 64.40.020 might change the existing state of the law is no reason to interpret it so that it does not. Regardless, because the parties have not briefed the issue, we decline to rule on the continued viability of this rule of statutory construction. Instead, we accept the rule for purposes of this appeal.

However, in making its strict construction argument, the County has failed to correctly identify the "common law" with which RCW 64.40.020 is concerned. As already noted, the issue in this case is not whether quasi-judicial immunity for individuals has been abrogated, but whether a governmental entity's vicarious immunity has been abrogated. As we have already noted, the common law as to *individual* immunity in this situation is still an open question. Any immunity the *municipality* might have is only derivative from or secondary to that individual immunity. This derivative, vicarious immunity is traced to the 1966 *Creelman* decision, which has since been somewhat limited by our recent decision in *Babcock v. State, supra* at 619-22, where we held that the State does not get the benefit of the qualified or absolute immunity of its Department of Social and Health Services caseworkers. Therefore, while we do not call the holding of *Creelman* into question, we do note

that its establishment at the common law is even less certain than the individual quasi-judicial immunity which the County has argued.

▌ Thus, keeping in mind the rule that intent to change the common law must be made clear, but also noting the somewhat unclear state of the common law at issue, we find that RCW 64.40.020 evidences a legislative intent to abrogate the *Creelman* rule of vicarious municipal immunity for the quasi-judicial acts of its officials.

▌ Interpreting the statute any other way would render it meaningless or, at the very least, any other interpretation would create an inconsistency within the statute, both of which we assume the Legislature does not intend to do. *See State v. McCullum*, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983); *Avlonitis v. Seattle Dist. Court*, 97 Wn.2d 131, 138, 641 P.2d 169, 646 P.2d 128 (1982).

The statute can be interpreted as creating a cause of action only for quasi-judicial acts such as the grant or denial of a conditional use permit. If this is the case, then the statute is useless, since we are assuming for purposes of this appeal that under *Creelman* local governments would be immune for all such quasi-judicial acts.

On the other hand, the County argues that "ministerial" acts, such as the issuance of a building permit, could be covered by the statute, and that the statute is therefore not useless. The problem is that if such an act *is* ministerial as the County claims, *see State ex rel. Craven v. Tacoma*, 63 Wn.2d 23, 27, 385 P.2d 372 (1963), an inconsistency would be created within the statute. *But see Polygon Corp. v. Seattle*, 90 Wn.2d 59, 65, 578 P.2d 1309 (1978); *Seattle Shorelines Coalition v. Justen*, 93 Wn.2d 390, 394, 609 P.2d 1371 (1980). That is, RCW 64.40.020(1) would create liability *only* for an arbitrary or capricious "ministerial" decision (a quasi-judicial decision would be immune). However, under RCW 64.40.020(3), no cause of action is created for "unintentional . . . ministerial errors". This language implies that a cause of

action is created only for intentional ministerial errors. Thus, under the County's reasoning, the same statute seems to require two different standards of conduct to establish liability for one act: "arbitrary or capricious conduct" and "intentional conduct". Either subsection (1) or subsection (3) would be superfluous. "Statutes should not be interpreted in such a manner as to render any portion meaningless, superfluous or questionable." *Avlonitis v. Seattle Dist. Court, supra* at 138.

Reading subsection (1) as abrogating a municipality's quasi-judicial immunity resolves the apparent conflict. Under this interpretation, liability for quasi-judicial and administrative acts is determined according to the "arbitrary, capricious or unlawful" standard of subsection (1), while liability for ministerial acts is determined according to the "intent" standard of subsection (3). We adopt this interpretation as more indicative of the legislative intent in enacting RCW 64.40.

Our interpretation of the statute is buttressed by reference to the legislative intent expressed in the legislative history of RCW 64.40. The County's position is that only historical matter appearing in the House or Senate Journals may be used as a source of legislative history and since nothing relevant to the present inquiry appears in either journal, legislative history cannot be used in this case to determine legislative intent. Therefore, the County takes the categorical position that because RCW 64.40 makes no mention of quasi-judicial actions, the Legislature could not have intended abrogation of immunity. Brief of Respondent, at 9.

■■ The County's argument is too broad. It is true that we have expressed restrictions upon sources of legislative history. *See North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 326, 759 P.2d 405 (1988); *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 291, 494 P.2d 216 (1972). We have never, however, limited our consideration of legislative history materials to those contained in the journals. Our focus is not on where the materials are found, but

on whether they are sufficiently probative of the Legislature's intent. Therefore, it is of some assistance to our interpretation to look to such documentation as may bear on the issue.

A memorandum from the chair of the House Local Government Committee to the Senate Judiciary Committee and its members concerning the bill which became RCW 64.40 contains the following:

> SHB 1006 applies to quasi-judicial acts and not to comprehensive plans or zoning ordinances, which are legislative actions.

Particularly when a party claims a complete lack of intent on the part of the Legislature as to the purpose of a bill, a formal document, such as this one, from a committee chair to the appropriate committee and its members in the other chamber is entitled to consideration. The weight and relevance are determined by the reviewing court. Here, the memorandum is persuasive evidence that the Legislature, in enacting RCW 64.40, did not intend local governments to be immunized from liability for the quasi-judicial acts of their land use officers.

Further support for this interpretation of the statute is found by examining the policy reasons which, in general, justify granting quasi-judicial immunity to individual governmental officers.

■ Absolute immunity necessarily leaves wronged claimants without a remedy. This runs contrary to the most fundamental precepts of our legal system. Therefore, in determining whether a particular act entitles the actor to absolute immunity, we must start from the proposition that there is no such immunity. *Butz v. Economou*, 438 U.S. 478, 506, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978) ("No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it.") (quoting *United States v. Lee*, 106 U.S. 196, 220, 27 L. Ed. 171, 1 S. Ct. 240 (1882)). Only when the person claiming absolute

immunity can prove that such immunity is justified will we impose it.

In order for a government official to make this showing, he or she must establish three things. First, the official must show that he or she performs a function which is analogous to that performed by persons entitled to absolute immunity, such as judges or legislators. Second, the official must show how the policy reasons which justify absolute immunity for the judge or legislator also justify absolute immunity for that official. And third, the official must show that sufficient safeguards exist to mitigate the harshness to the claimant of an absolute immunity rule. *Butz v. Economou, supra* at 512-13; *see* Note, *Quasi-Judicial Immunity of State Officials:* Butz v. Economou's *Distorted Legacy*, 1985 U. Ill. L. Rev. 401, 417-20.

Our opinion in *Taggart v. State*, 118 Wn.2d 195, 822 P.2d 243 (1992) identified factors which can be used to assess whether a challenged administrative action is functionally comparable to judicial action, in the context of parole board action. Our analysis here augments the discussion in *Taggart*. For example, in *Taggart*, at 205, we noted that whether safeguards exist to protect against errors is one factor which is important in deciding whether a challenged administrative action is functionally comparable to judicial action. However, *Taggart* should not be read as implying that in the absence of any form of procedural safeguards, other factors would be sufficient to justify quasi-judicial immunity.

Thus, the discussion which follows is more detailed in the analysis to be applied, particularly in the discussion of relevant policy considerations, but it does not signify a departure from the analysis in *Taggart*.

As to the first element which the official must establish, we accept the parties' assumption that the hearing examiner and county council were performing judgelike acts when they passed on the conditional use permit. *See Beach v. Board of Adj.*, 73 Wn.2d 343, 345, 438 P.2d 617 (1968); *Pleas v. Seattle*, 112 Wn.2d 794, 805 n.1, 774 P.2d 1158 (1989).

■ The second element of the analysis is concerned with policy. Absolute immunity for judges is thought necessary because

> the proper functioning and indeed the very survival of any independent, dispute-resolving system requires that the dread of subsequent lawsuits be prevented from becoming a factor in a judge's assessment of the merits of a case. . . . Absolute immunity, as the Supreme Court has acknowledged, leaves the genuinely wronged person without civil redress. However, broader societal concerns dictate that the balance be struck in favor of freeing judges from the constant fear of retaliatory suits.

*Sellars v. Procunier*, 641 F.2d 1295, 1299-1300 (9th Cir.), *cert. denied*, 454 U.S. 1102 (1981); *see also Butz v. Economou*, *supra*. This statement of policy breaks down into a number of related categories. First, absolute immunity prevents injustice to officials whose position requires them to exercise discretion. Second, it prevents the paralysis that might otherwise result if officials were constantly preoccupied with the liability-creating potential of their acts. Third, it alleviates the fear that because of the potential of personal liability, no one will hold public office. *German v. Killeen*, 495 F. Supp. 822, 830 (E.D. Mich. 1980); *see* Pearlman, *Section 1983 and the Liability of Local Officials for Land Use Decisions*, 23 Wash. U.J. Urb. & Contemp. L. Ann. 57, 63 (1982); Note, 1985 U. Ill. L. Rev. at 409-10; Mashaw, *Civil Liability of Government Officers: Property Rights and Official Accountability*, 42 Law & Contemp. Probs. 8, 27 (1978); Jaffe, *Suits Against Governments and Officers: Damage Actions*, 77 Harv. L. Rev. 209, 220 (1963-1964). Fourth, it avoids the possibility of a conflict of interest, in that it avoids the situation where a judge or judicial officer could be sued for his or her decision by the party from one side of a controversy, but not by the party from the other. Mashaw, *supra* at 28. This is a particularly appropriate concern in the land use context because it is usually only the developer who has been denied a permit who can sue for damages after an adverse decision. Finally, immunity protects the conscientious judge or judicial official, who would be most at risk if

there were no immunity. Block, Stump v. Sparkman *and the History of Judicial Immunity*, 1980 Duke L.J. 879, 886-87.

■ These policy concerns are not implicated in this case in the same way they would be if individual immunity were at stake. The policy justifications listed above are concerned primarily with maintaining the independence of individual officers. Although agency immunity is based on the same policy grounds, *see Creelman v. Svenning*, 67 Wn.2d 882, 410 P.2d 606 (1966), such immunity does not advance the policy as strongly as individual immunity. The threat of agency liability will not necessarily hamper individual decisionmaking as much as the threat of individual liability will. Moreover, finding absolute immunity for the municipality where there is also absolute immunity for the individual leaves the victim entirely without a remedy, whereas eliminating municipal immunity accommodates both the decisionmaker and the victim by allowing a certain degree of independence in individual decisionmaking, while also providing the wronged claimant with a remedy. *See Owen v. Independence*, 445 U.S. 622, 653 n.37, 654-56, 63 L. Ed. 2d 673, 100 S. Ct. 1398, *reh'g denied*, 446 U.S. 993 (1980); *see also Babcock v. State*, 116 Wn.2d 596, 620-22, 809 P.2d 143 (1991). *But see Creelman v. Svenning, supra* at 885; *Babcock v. State, supra* at 637-39 (Andersen, J., concurring in part, dissenting in part). Thus, policy concerns counsel in favor of the abrogation of governmental immunity.

■ The third element of the *Butz* test relates to the procedural safeguards which help to insure the correctness of officials' decisions and therefore reduce the need for a damages action against the officer. In *Butz*, the Supreme Court listed some of these factors. These include: (1) the insulation of the judge from political influences, (2) the importance of precedent in resolving controversies, (3) the adversary nature of the process, and (4) the correctability of error on appeal. *Butz v. Economou, supra* at 512.

■ These factors do not apply with the same force in the quasi-judicial land use setting as they do in the purely

judicial setting. Neither hearing examiners, board of adjustment members, nor county or city council members are immune from political influence. The council members are elected and the hearing examiner and board members are appointed for limited terms. RCW 36.70.220 (board); RCW 36.70.970 (hearing examiner).

Also, precedent is not as important in the land use regulatory setting as in the judicial setting. Board of adjustment members and hearing examiners are required to exercise their discretion and judgment to determine on a case-by-case basis whether a particular land use should be permitted. Because one use may have been permitted in the past does not necessarily mean the same type of use should now be permitted in the same place, and in fact it may actually preclude a proposed use.

Likewise, the nature of the administrative process is distinctly less adversarial than the judicial process. Although land use hearings *may* be adversarial in nature, they need not be. Such decisions are often made without opposition. Moreover, the rules of evidence and procedure are somewhat relaxed, thus lessening slightly the reliability of the information upon which the ultimate decision is based.

Finally, errors in an administrative proceeding are less likely to be corrected on appeal than errors in a judicial proceeding. Administrative decisions such as this one are usually appealable. However, the appeal is usually limited to the record established in the agency hearing which, due to the previously explained evidentiary and procedural problems, may be inadequate or one sided. The appellate court must also give deference to the agency's interpretation of laws when the agency is uniquely qualified to interpret those laws. *See Renton Educ. Ass'n v. Public Empl. Relations Comm'n*, 101 Wn.2d 435, 680 P.2d 40 (1984). As a result, appeal from an administrative decision is less likely to correct errors in the prior decision than an appeal from a judicial decision would be.

In view of this analysis some commentators have concluded that *individuals* performing quasi-judicial acts such

as those at issue here should not receive absolute quasi-judicial immunity. *See, e.g.,* Jaffe, *supra* at 209; Note, 1985 U. Ill. L. Rev. 401, *supra;* Note, *Quasi-Judicial Immunity: Its Scope and Limitations in Section 1983 Actions,* 1976 Duke L.J. 95. While we are not deciding that issue, it is apparent that if the immunity of individual officers is in question, then the immunity of the local government which employs them is certainly in question. In any event, the factors respecting individual immunity which we consider relevant to the question of agency immunity certainly weigh in favor of no immunity for the agency.

The County, however, makes one final argument in support of maintaining governmental immunity. It argues that judges could be included within RCW 64.40.010(1)'s definition of "agency" and that if the statute is interpreted as abrogating quasi-judicial immunity, it could therefore also be interpreted as abrogating judicial immunity. The County argues that the Legislature could not have intended to abrogate judicial immunity when it enacted RCW 64.40.020 so the statute should not be interpreted as abrogating quasi-judicial immunity. This argument is entirely without merit.

We turn first to the definition of agency. Agency is defined as the "state of Washington" and "any of its political subdivisions, including any . . . public body exercising regulatory authority or control over the use of real property in the state." RCW 64.40.010(1). Presumably, the County would include judges within the term "body" in order to qualify them as agencies. This argument fails because judges are individuals, while "body" is defined as "a group or number of persons or things" or "a group of individuals united by a common tie or organized for some purpose". *Webster's Third New International Dictionary* 246 (1981). Moreover, judges do not exercise "regulatory authority or control" over property. "Regulation" is defined in RCW 64.40.010(5) as "any ordinance, resolution, or other rule or regulation adopted pursuant to the authority provided by state law,

which imposes or alters restrictions, limitations, or conditions on the use of real property." This definition does not encompass judicial decisions. Since judges do not "regulate" under the statute, they cannot exercise "regulatory authority or control" so as to qualify as an agency under the statute.

Regardless of the terms of the statute, the analysis of whether a statute could abrogate judicial immunity is necessarily much different than the analysis of whether a statute can abrogate a municipality's vicarious immunity for the quasi-judicial acts of its officers. Judicial immunity traces its origin back at least to the 17th century in England. *See* Block, *supra* at 885 (citing *Floyd v. Barker*, 77 Eng. Rep. 1305 (K.B. 1607)). It has been termed "a general principle of the highest importance to the proper administration of justice". *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L. Ed. 646 (1872). The vicarious municipal immunity at issue here, on the other hand, has only been recognized in this state since 1966, *see Creelman v. Svenning*, *supra*, and has not been applied in the most recent case to raise the issue, *see Babcock v. State*, *supra*. It would take a much greater showing of intent than is present in this case to abrogate judicial immunity, *if it could be done at all.*

We therefore hold that under RCW 64.40.020 an "agency" *can* be liable for the quasi-judicial acts of its officers. The portion of the trial court's order which concludes otherwise is in error. However, the trial court alternatively held that even if RCW 64.40.020 did apply in this case, "plaintiff has not demonstrated that the defendants' actions were made with knowledge that the actions were unlawful or were in excess of lawful authority, or that the defendants should reasonably have known that the actions were unlawful or in excess of lawful authority." Clerk's Papers of Plaintiff, at 15-16. Judge Thibodeau therefore granted summary judgment to the County.

To determine whether the grant of summary judgment to the County was proper, we must determine whether

the interpretation of RCW 64.40.020 upon which the trial court based its alternative holding is correct. That holding assumed that RCW 64.40.020(1) *requires* knowledge of unlawfulness. This interpretation of the statute is incorrect. RCW 64.40.020(1) creates a cause of action for acts which are "arbitrary, capricious, unlawful, *or* exceed lawful authority . . .." (Italics ours.) That same section further provides that an "action is *unlawful or in excess of lawful authority* only if the final decision of the agency was made with knowledge of its unlawfulness or . . . it should reasonably have been known to have been unlawful". (Italics ours.)

The fact that the disjunctive "or" is used in the first part of the statute shows that acting *either* arbitrarily and capriciously *or* unlawfully or in excess of lawful authority will create a cause of action. *Childers v. Childers*, 89 Wn.2d 592, 595, 575 P.2d 201 (1978). This conclusion is strengthened when actions which are "unlawful or exceed lawful authority" are dealt with separately later on in the same section. Thus, *knowledge of unlawfulness is not required for a cause of action under RCW 64.40.020(1)*, but is only required when the cause of action is based on conduct which is unlawful or exceeds lawful authority.

Here, appellant is basing its cause of action on arbitrary and capricious acts, and therefore need not show knowledge of unlawfulness. Judge Thibodeau was therefore incorrect in dismissing appellant's claim under RCW 64.40.020(1) and thus was in error when he granted the County's motion for summary judgment.

We must now determine whether the trial court also erred in denying appellant's motion for summary judgment. Appellant correctly notes that all it needs to show to be entitled to recovery under the statute is arbitrary or capricious conduct. It asserts that the prior decision by Judge Kershner, which concluded that the denial of the permit on the third application was arbitrary and capricious, is binding at this stage of the litigation under the doctrine of collateral estoppel. *See King v. Seattle*, 84 Wn.2d 239, 242,

525 P.2d 228 (1974); *Jensen v. Torr*, 44 Wn. App. 207, 721 P.2d 992, *review denied*, 107 Wn.2d 1004 (1986). Appellant also contends that the doctrine of "law of the case" prevents relitigation of the "arbitrary and capricious" determination. Appellant therefore contends that it has satisfied the requirements of the statute and is entitled to summary judgment.

We initially note that the law of the case doctrine is entirely inapplicable here. The term "law of the case" means different things in different circumstances. In one sense, it refers to "the binding effect of determinations made by the appellate court on further proceedings in the trial court on remand." (Footnote omitted.) 15 L. Orland & K. Tegland, Wash. Prac., *Judgments* § 380, at 55 (4th ed. 1986). The term also refers to the "rule that the instructions given to the jury by the trial court, if not objected to, shall be treated as the properly applicable law." (Footnote omitted.) 15 L. Orland & K. Tegland, *supra* at 56. Finally, "the term is employed to express the principle that an appellate court will generally not make a redetermination of the rules of law which it has announced in a prior determination in the same case or which were necessarily implicit in such prior determination." (Footnote omitted.) 15 L. Orland & K. Tegland, *supra* at 56. This final use of the term has been limited by case law and rules of court. *See Folsom v. County of Spokane*, 111 Wn.2d 256, 263-64, 759 P.2d 1196 (1988); RAP 2.5(c).

Appellant does not make clear which use of the term it relies on here. None of them, however, is applicable. The first and third uses require a prior appellate decision. *See Fluke Capital & Mgt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 620, 724 P.2d 356 (1986). The County did not appeal Judge Kershner's decision. The second use of the term requires jury instructions. No such instructions were given in the certiorari action because there was, and could be, no jury. *See* RCW 7.16.030-.140.

 Collateral estoppel, on the other hand, is available to appellant here. That doctrine prevents the relitigation of an issue or determination of fact after the party sought to be estopped has had a full and fair opportunity to present his or her case. *Jensen v. Torr, supra* at 213. Initially, we note that both Judge Kershner's decision on the writ of certiorari and Judge Thibodeau's decision which is presently at issue are parts of the same case. Thus, the usual collateral estoppel scenario, where the decision in one case is sought to be used in a different case, is not present.

 However, the parties agree that collateral estoppel is the appropriate doctrine to be addressed here. They are correct. The nature of certiorari, as will be discussed, is such that its procedure cannot be used to decide damages issues. Therefore, although the certiorari and damages causes of action were included by appellant in the same complaint, they were necessarily decided separately. The County could have appealed the certiorari decision, RCW 7.16.350, and did not do so. The two separate superior court actions can therefore be considered "different cases" for purposes of discussing collateral estoppel. *See* 15 L. Orland & K. Tegland, Wash. Prac., *Judgments* § 376 (4th ed. 1986) (and cases cited therein).

 The County claims, however, that the doctrine is not applicable in this case because Judge Kershner's "finding" in the prior action was not necessary to decide the case, was superfluous, and should therefore be ignored. The County cites *King Cy. Water Dist. 54 v. King Cy. Boundary Review Bd.*, 87 Wn.2d 536, 554 P.2d 1060 (1976) and *Grader v. Lynnwood*, 45 Wn. App. 876, 728 P.2d 1057 (1986) to support this argument. Those cases are inapposite, however, because Judge Kershner's "finding" here *was not* superfluous. In order to grant relief under a writ of certiorari, a superior court *must* determine that a judicial or quasi-judicial action was one of a number of things, including either arbitrary and capricious or contrary to law. *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 643 P.2d 426 (1982). Judge Kershner did just that in his prior decision. Since it

is not superfluous, Judge Kershner's prior finding cannot be ignored. The doctrine of collateral estoppel must be examined to determine whether that prior decision should be given preclusive effect.

Four conditions must be met before the doctrine will be applied: (1) the issues in the two actions must be identical; (2) there must have been a final judgment in the first action; (3) the party against whom the estoppel is being pleaded must have been a party or in privity with a party to the first action; and (4) application of the doctrine cannot work an injustice on the party against whom it is pleaded. *Jensen v. Torr*, at 213.

The County contends that collateral estoppel does not apply here because conditions (1) and (4) of the test are not met. The County asserts that the issues in this litigation are different from those in the prior one because the prior one was decided on a writ of certiorari. The certiorari procedure is used to correct improper judicial or quasi-judicial decisions. *Williams v. Seattle Sch. Dist. 1, supra.* As such, the judge who is considering whether to grant relief under the writ is considering *only* whether the decision made below was correct. Considerations of culpability should not enter into the decision. The present litigation, however, is concerned solely with culpability. Since the subject of this action is fault, an issue which was not considered in the action on the writ of certiorari, the County maintains that collateral estoppel is not warranted.

This argument is unpersuasive because RCW 64.40-.020(1) requires no proof of fault beyond arbitrary or capricious conduct. Since the question of whether there was arbitrary or capricious conduct was exactly the issue considered by Judge Kershner, the issues are the same.

The County also asserts, however, that it would not be fair to apply collateral estoppel here, where it has not had an opportunity to fully and fairly litigate its fault in the prior action. As already stated, an action under a writ of certiorari is not concerned with monetary liability; therefore, the issue was not considered by Judge Kershner. Also,

the only evidence upon which a court decides whether to grant relief under the writ is the administrative record below. RCW 7.16.070. Therefore, the County argues, it did not have an opportunity nor any incentive to present its arguments relative to monetary liability to Judge Kershner.

This is the basis upon which the County distinguishes the cases cited by appellant. All of those cases held that prior findings in actions for mandamus were binding in later judicial actions where the question was liability. The County points out that damages can be considered by the court in a mandamus action but not in a certiorari action. RCW 7.16.210. Moreover, additional evidence can be taken in a mandamus action. RCW 7.16.210, .250.

Although the County's argument has some merit, it is not unfair to make the County live with Judge Kershner's decision under the facts of this case. The County cannot claim to be surprised that Judge Kershner's decision might be used to establish its monetary liability, because at the time the writ of certiorari was issued, appellant's complaint also included all three of appellant's claims for damages. The County therefore cannot claim that it would be unfair to apply collateral estoppel here because it did not anticipate an action for damages based on the same conduct. Moreover, while the County may not have been able to supplement the administrative record in the certiorari action, it did have the opportunity to argue its case to the judge, RCW 7.16.110, an opportunity of which it took full advantage.

Since the issues are identical and application of the doctrine will not work an injustice on the County, we hold collateral estoppel prevents relitigation of Judge Kershner's finding that the County acted arbitrarily and capriciously in denying the conditional use permit. The effect of this holding is that, for purposes of this action, such arbitrary and capricious conduct is conclusively established. Since this is all that is required to establish a cause of action under RCW 64.40.020(1), appellant has demonstrated that it does

have a cause of action against the County under that statute. Appellant's motion for partial summary judgment, establishing the County's liability under RCW 64.40.020(1), should therefore be granted. Accordingly, we reverse the trial court's denial of appellant's summary judgment motion and remand to the trial court with instructions to grant the motion.

## II
### SECTION 1983

Appellant also claims denial of the conditional use permit violated the federal constitutional guaranties of equal protection and due process. It therefore seeks a damages remedy under 42 U.S.C. § 1983. Judge Thibodeau denied this claim, stating that appellant "has not shown that the denial was made with 'purposeful discrimination or at least an allegation that the misdeeds were knowing or reckless.' " (Citation omitted.) Clerk's Papers of Plaintiff, at 16. We reverse.

42 U.S.C. § 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, in order to proceed in a § 1983 action, a plaintiff must show that some person deprived plaintiff of a federal constitutional or statutory right, and that person must have been acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled in part on other grounds in Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986); *American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 12, 802 P.2d 784 (1991).

In addressing the § 1983 claim, we first observe that liability will not be found if there is immunity from a § 1983

suit. *See Tenney v. Brandhove*, 341 U.S. 367, 95 L. Ed. 1019, 71 S. Ct. 783 (1951); *Pierson v. Ray*, 386 U.S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967).

The County can raise no immunity defense. It is possible that the hearing examiner and county council members are individually absolutely immune from a § 1983 suit because they were acting in a quasi-judicial capacity. *See Schlegel v. Bebout*, 841 F.2d 937, 942 (9th Cir. 1988); *Meyers v. Contra Costa Cy. Dep't of Social Servs.*, 812 F.2d 1154, 1159 (9th Cir.), *cert. denied*, 484 U.S. 829 (1987); *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir. 1981); *Centennial Land & Dev. Co. v. Medford*, 165 N.J. Super. 220, 397 A.2d 1136 (1979).

■ However, the County does not enjoy the immunity of its agents in actions for compensatory damages under § 1983. *Kentucky v. Graham*, 473 U.S. 159, 166-67, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985); *Owen v. Independence*, 445 U.S. 622, 654-56, 63 L. Ed. 2d 673, 100 S. Ct. 1398, *reh'g denied*, 446 U.S. 993 (1980); *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 681 (9th Cir. 1984). *But cf. Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981) (municipality has absolute immunity to suit for punitive damages). Thus, appellant is correct that *Collins v. King Cy.*, 49 Wn. App. 264, 271, 742 P.2d 185 (1987), which appears to hold that an officer's individual immunity can be imputed to the officer's employing governmental agency, is wrong and must be overruled to the extent that it so holds. We do so now.

■ A "person" must act. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). There is no question that a city or county can be a "person" for purposes of establishing liability under § 1983. *See Monell v. Department of Social Servs.*, *supra*. The County is therefore a "person" for purposes of our review.

The person must act "under color of state law". *See Monroe v. Pape*, 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961). There is no contention that the County was not acting under color of state law when it denied the conditional use permit. We therefore assume that the County

was acting under color of state law for purposes of deciding this appeal.

The act must result in "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws," *i.e.*, the deprivation of a federally created right.

██ ██ The primary issue as to the County's liability under § 1983 is whether the County actually caused appellant any injury. This question hinges on whether the denial of the permit constituted the County's "official policy". If it was the County's "official policy", then the County will be held to have caused any constitutional deprivation appellant may have suffered.

Appellant repeatedly asserts that this is an "official capacity" action, Brief of Appellant, at 2-3, in other words, an action against the County itself, not against the hearing examiner and the county council members in their individual capacities.

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. . . . More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation . . . thus, in an official-capacity suit the entity's "[official] policy or [unofficial] custom" must have played a part in the violation of federal law.

*Graham*, at 166. In other words, "[r]espondeat superior may not be the basis for [government] liability" under § 1983. *Hontz v. State*, 105 Wn.2d 302, 310, 714 P.2d 1176 (1986) (citing *Monell v. Department of Social Servs., supra* at 694).

This rule is grounded in the language of § 1983 itself, which requires a defendant to "subject" the plaintiff to a violation of his or her constitutional rights before the plaintiff has a cause of action. The Supreme Court has held in *Monell* that for the municipality itself to "subject" the plaintiff to the injury, the act of its agent which actually causes the injury must be pursuant to municipal policy. Therefore, the "policy" requirement at issue here is concerned with causation, not immunity. *See Pembaur v. Cincinnati*, 475

U.S. 469, 478-80, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986); *St. Louis v. Praprotnik*, 485 U.S. 112, 122, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988); *see also* S. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983*, § 6.07 (2d ed. 1986 & Supp. 1990) (policy requirement not only concerned with cause in fact, but also with duty).

The first case to consider whether a single act by a local government officer could lead to local government liability was *Pembaur v. Cincinnati, supra* at 481. In that case, an assistant prosecuting attorney authorized police officers to "go in and get" witnesses who had previously refused police requests to produce themselves. The Court found that the prosecuting attorney's authorization constituted county policy. *Pembaur* is significant in that a majority of the Court for the first time determined that a single act *can* lead to local government liability. *Pembaur*, at 480. It is also significant in that it seemed to adopt a test for determining when an act is "policy" which differs from the ordinary understanding of the word. The focus in *Pembaur* was not on whether the assistant prosecutor's decision was a "policy" decision in the sense of "a definite course or method of action selected from among alternatives and in light of given conditions to guide and determine present and future decisions." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 n.6, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (quoting *Webster's Ninth New Collegiate Dictionary* 910 (1983)), *reh'g denied*, 473 U.S. 925 (1985). Rather, the focus was on whether the assistant prosecutor was a final policymaker. The Court essentially read "policy" (in the usual sense of the word) out of the test by defining policy in terms of "a course of action tailored to a particular situation and not intended to control decisions in later situations." *Pembaur*, at 481. In other words, a "policy" decision could be any decision, so long as it was made by the right person.

Thus, the focus in determining whether a local government officer's act is attributable to the local government is whether the officer is the final policy-making authority for the local government in the area concerning the decision which the officer made. *Pembaur*, at 481-83 (plurality). In other words,

"municipal liability under § 1983 attaches where — and only where — a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, at 483-84 (plurality).

This accords with the purpose behind *Monell*'s policy requirement. "*Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' — that is, acts which the municipality has officially sanctioned or ordered." *Pembaur*, at 480. "When a local governmental unit chooses to exercise its power by delegating to officials the final authority to act in a particular matter, the policymaker acts on behalf of the local government in the matter." (Footnote omitted.) Snyder, *The Final Authority Analysis: A Unified Approach to Municipal Liability Under Section 1983*, 1986 Wis. L. Rev. 633, 657. Thus, where the final policymaker acts, the municipality acts and can therefore be held liable under § 1983.

In fact, the *Pembaur* opinion seems to have anticipated the present case when it noted that

No one has ever doubted . . . that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body — whether or not that body had taken similar action in the past or intended to do so in the future — because even a single decision by such a body unquestionably constitutes an act of official government policy.

*Pembaur*, at 480. In the present case, the legislative body of Snohomish County, its county council, denied a conditional use permit, a 1-time event. The factual stance of the present case is indistinguishable from that discussed in *Pembaur* and should therefore render the County subject to liability under § 1983.

*Pembaur*'s interpretation of the official policy requirement has been reaffirmed by later cases. In *St. Louis v. Praprotnik*, 485 U.S. 112, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988) an architect sued his supervisor and the City for allegedly retaliatory employment practices which resulted in his even-

tual termination. He alleged that his employment supervisor was the final policy-making authority and that under *Pembaur*, the supervisor's decisions therefore represented city policy. Justice O'Connor, speaking for the plurality, held that the trial court's instructions regarding "official policy" were legally incorrect and therefore remanded to the Court of Appeals. In the course of its discussion, the plurality distilled four principles from *Pembaur*. Of those four, two are important for our purposes. First, the plurality noted that "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." *Praprotnik*, at 123 (plurality). Second, it noted that "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business." *Praprotnik*, at 123 (plurality). Thus, the *Praprotnik* plurality essentially adopted the *Pembaur* plurality's definition of "official policy".

Justice Brennan, concurring in the *Praprotnik* judgment, took the opportunity to make his position in *Pembaur* even clearer. He noted that the policy requirement is not an

> end in itself, but rather . . . a means of determining which acts by municipal employees are properly attributed to the municipality. Congress, we held, did not intend to subject cities to liability simply because they employ tortfeasors. But where a municipality's governing legislative body inflicts the constitutional injury, the municipal policy inquiry is essentially superfluous: the city is liable under the statute whether its decision reflects a considered policy judgment or nothing more than the bare desire to inflict harm.

*Praprotnik*, at 139 n.3 (Brennan, J., concurring in judgment).

> [A]s long as the contested decision is made in an area over which the official or legislative body *could* establish a final policy capable of governing future municipal conduct, it is both fair and consistent with the purposes of § 1983 to treat the decision as that of the municipality itself, and to hold it liable for the resulting constitutional deprivation.

*Praprotnik*, at 140 (Brennan, J., concurring in judgment).

Most recently, in *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989), the Court again reaffirmed *Pembaur*, this time in a majority. It recognized the necessity of "determining whether either [of the alleged policymakers in that case could] be considered policymakers for the school district such that their decisions may rightly be said to represent the official policy of the DISD subjecting it to liability under § 1983." The Court accordingly remanded to allow the lower court to make the determination.

Reading these three Supreme Court decisions together leads to the conclusion that a local government can be liable under § 1983 for a single act of one of its officers only where (1) one of its final policymakers acts (2) in an area within which that policymaker *could have* established local government policy (in the usual sense).[1]

Given this definition of "official policy", disposition of this case is relatively simple. There is no question that the Snohomish County Council is the final policy-making body for Snohomish County. There is also no question that the council has the power to establish county policy relative to land use, and more specifically, to the granting or denial of conditional use permits. Such grant or denial is therefore an area within which the council *could have* established policy, even

---

[1]When local government liability is alleged based on inadequate supervision or training of local government officers who then, in a single act, cause injury, local government liability is based not so much on the individual officer's single act as on the government's failure to train or supervise, which is an ongoing process (or nonprocess). The local government "may be liable if it had a policy or custom of failing to train its employees and that failure to train caused the constitutional violation." *Collins v. Harker Heights*, ___ U.S. ___, 117 L. Ed. 2d 261, 112 S. Ct. 1061, 1068 (1992). Inadequate training can be characterized as the cause "if — and only if — the failure to train amounted to 'deliberate indifference' to the rights of persons with whom" the officers come into contact. *Collins*, 112 S. Ct. at 1068 (explaining decision in *Canton v. Harris*, 489 U.S. 378, 392, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989)). *But see* Brown, *Correlating Municipal Liability and Official Immunity Under Section 1983*, 1989 U. Ill. L. Rev. 625 (*Harris* can be interpreted as inconsistent with *Pembaur* and *Praprotnik*).

if its decision in this case does not meet the usual definition of policy. Therefore, the county council's denial of the conditional use permit is the County's official policy for purposes of establishing its liability under § 1983. *See Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988).

Our next inquiry is whether the County's denial of the conditional use permit violated appellant's constitutional rights. Appellant alleges that it has suffered violation of its equal protection and due process rights. Judge Thibodeau rejected this contention, dismissing appellant's § 1983 claim based on appellant's failure to prove "purposeful discrimination or at least . . . knowing or reckless" conduct.

The trial court based its holding on a passage from *Grader v. Lynnwood*, 53 Wn. App. 431, 438, 767 P.2d 952, *review denied*, 113 Wn.2d 1001, *cert. denied*, 493 U.S. 894, 107 L. Ed. 2d 193, 110 S. Ct. 243, *reh'g denied*, 493 U.S. 986 (1989). This passage reads: "a showing of purposeful discrimination or at least an allegation that the misdeeds were knowing or reckless is necessary to sustain a § 1983 action." To the extent this suggests that § 1983 requires a greater showing of fault than required to make out the constitutional violation which is being sued upon, it is incorrect. The Supreme Court has held in *Parratt v. Taylor*, 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908 (1981), *overruled in part on other grounds in Daniels v. Williams*, 474 U.S. 327, 88 L. Ed. 2d 662, 106 S. Ct. 662 (1986), that § 1983 imposes no state of mind requirement beyond that necessary to establish the constitutional violation involved. Therefore, if a constitutional violation can be shown, relief is available under § 1983, assuming the other prerequisites for stating a § 1983 claim have been met. As a result, the trial court's reliance on *Grader* in this respect was error.

Nevertheless, we uphold the trial court with respect to its grant of the County's summary judgment motion on the equal protection issue. Appellant has not shown that it belongs to any *class* which is being discriminated against. It merely alleges that *it* is being discriminated against. Such a

claim is more properly addressed as a substantive due process challenge.

 "Along with the vast majority of federal courts, we recognize that denial of a building permit, under certain circumstances, may give rise to a substantive due process claim." (Citations omitted.) *R/L Assocs., Inc. v. Seattle*, 113 Wn.2d 402, 412, 780 P.2d 838 (1989). We see no reason to treat denial of a conditional use permit any differently. Such denial therefore can constitute a due process violation.[2] Such a violation is made out, however, only if the decision to deny the permit is "invidious or irrational" or "arbitrary or capricious". *R/L Assocs., Inc.*, at 412. In the present case, the trial court can be interpreted as denying appellant's due process claim based on the fact that the County did not act knowingly or recklessly in denying the permit. This is the wrong standard. The standard is arbitrary or capricious and as already discussed, Judge Kershner's finding in the certiorari action that the County acted arbitrarily and capriciously in denying the permit conclusively satisfies that standard. Appellant therefore has established as a matter of law and fact that the County violated substantive due process when it denied the conditional use permit.

Because all of the other prerequisites to a § 1983 claim have been satisfied, appellant is entitled to relief. The trial court's grant of summary judgment to the County and its denial of summary judgment to appellant must therefore be reversed.

### III
### INTENTIONAL INTERFERENCE WITH A
### BUSINESS EXPECTANCY

Appellant next contends that the trial court improperly dismissed its claim of intentional interference with a busi-

---

[2] In that this case involves denial of a conditional use permit, it presents a different challenge than that presented in *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 787 P.2d 907 (1990). Section 1983 claims in the context of challenges to land use regulations as unconstitutional takings or substantive due process violations are addressed in *Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 829 P.2d 765 (1992) and *Robinson v. Seattle*, 119 Wn.2d 34, 830 P.2d 318 (1992).

ness expectancy. That dismissal was based on the trial court's conclusion that the hearing examiner and the county council were entitled to quasi-judicial immunity. Appellant claims again, based on *Monell v. Department of Social Servs.*, 436 U.S. 658, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978), that this is an "official capacity" lawsuit and that it is suing the County based on its own acts, not based on the acts of any of its agents. Therefore, the argument goes, the immunity of the County's agents does not transfer to the County as it would if the sole basis of liability were respondeat superior. *See Owen v. Independence*, 445 U.S. 622, 654-56, 63 L. Ed. 2d 673, 100 S. Ct. 1398, *reh'g denied*, 446 U.S. 993 (1980).

In other words, appellant is attempting to transplant the "official policy" analysis and all that it entails from § 1983 to state tort law. This is something we decline to do.

■■ ■■ Although *Monell*'s "official policy" analysis purports to hold local governments liable only for their own acts and not the acts of their agents, the analysis is still, like respondeat superior, just a form of vicarious liability. A governmental entity cannot take independent action, but must necessarily act through its agents. Therefore, the local government can only be liable, if at all, if the acts of its agents are imputed to it. *St. Louis v. Praprotnik*, 485 U.S. 112, 122, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988); Kramer & Sykes, *Municipal Liability Under § 1983: A Legal and Economic Analysis*, 1987 Sup. Ct. Rev. 249; Snyder, *The Final Authority Analysis: A Unified Approach to Municipal Liability Under Section 1983*, 1986 Wis. L. Rev. 633, 636 n.13. The only difference between the official policy doctrine and respondeat superior liability is that the official policy analysis only imputes the acts of *some* of the entity's agents to the entity, while respondeat superior imputes *all* of the agents' acts (within certain limits) to the entity.

This difference in vicarious liability has led to different results in terms of vicarious immunity. The Supreme Court has determined on a policy basis that for purposes of § 1983

and the limited vicarious liability scheme created by *Monell*, a local governmental entity does not enjoy the immunity of its agents. *Owen*, at 654-56. We, on the other hand, have recognized that for purposes of the complete vicarious tort liability (respondeat superior) we impose in the quasi-judicial context, a local governmental entity *does* enjoy the immunity of its agents. *Creelman v. Svenning*, 67 Wn.2d 882, 885, 410 P.2d 606 (1966).

Our decision in *Creelman* considered the same policy concerns presented to the Supreme Court in *Owen*, but in the different context of our different vicarious liability scheme. We therefore came to a different result. Not only would it be inappropriate for us to follow a nonbinding decision which does not involve the same considerations as those at issue here, but it would also create unwanted and unnecessary confusion. We decline to apply the "official policy" and immunity analyses of § 1983 to state tort law claims such as the one presented here by appellant.

Instead, we retain respondeat superior as the basis of local entity tort liability for the acts of their officers. As a result, "public policy . . . requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties which rest upon them . . .." *Creelman v. Svenning, supra* at 885. The only way the County could be liable to appellant is through the acts of its quasi-judicial officers, the hearing examiner and the county council members. As we have already stated, the parties agree the officers ·are protected by absolute quasi-judicial immunity and, for purposes of this appeal, we assume the parties are correct. Therefore, the County is immune from suit on this cause of action. The trial court properly granted summary judgment to the County on this issue.

## IV
### ATTORNEY FEES

Both parties request attorney fees on appeal pursuant to RAP 18.1. Both parties base their requests on RCW 64.40-

.020(2) and 42 U.S.C. § 1988, both of which require a person to be a "prevailing party" before attorney fees can be recovered. The County, as the losing party, therefore does not get its fees.

Appellant, however, is a prevailing party because we direct that summary judgment as to liability be entered in its favor. "Under section 1988 a prevailing plaintiff should ordinarily recover attorneys fees unless 'special circumstances' exist that militate against making such an award." *Toussaint v. McCarthy*, 826 F.2d 901, 903 (9th Cir. 1987). No such special circumstances exist here. We therefore hold that appellant is entitled to recovery of the attorney fees it incurred in this appeal under either RCW 64.40.020(2) or 42 U.S.C. § 1988. *Toussaint v. McCarthy, supra* at 904. However, since we were provided with no information relative to appellant's attorney fees on this appeal, we remand to the trial court for establishment of an appropriate award. *See Finch v. Vernon*, 877 F.2d 1497 (11th Cir. 1989). Appellant may request recovery of the attorney fees it expended in the trial court on remand.

## V
### Conclusion

We hold the trial court improperly granted summary judgment to the County and improperly denied summary judgment to appellant. Appellant has conclusively established causes of action under RCW 64.40.020(1) and 42 U.S.C. § 1983. We further hold that appellant's tortious interference with a business expectancy claim is precluded by the County's absolute immunity for the torts of its immune officials.

We therefore reverse and remand with instructions for the trial court to enter partial summary judgment in favor of appellant on the issue of liability under RCW 64.40-.020(1) and 42 U.S.C. § 1983. We uphold the trial court, however, in its grant of summary judgment to the County on the claim of intentional interference with a business expectancy. We also award appellant reasonable attorney

fees on appeal, to be set by the trial court on remand, under RCW 64.40.020(2) or 42 U.S.C. § 1988.

UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

ˑReconsideration denied July 30, 1992.