IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 35027-4-III |
| | ) | |
| DAVID WILLIAM JACKSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | OPINION PUBLISHED |
| and | ) | IN PART |
| | ) | |
| RHONDA LYN CLARK, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — The child relocation act (CRA), RCW 26.09.405-

.560, sets forth the procedure and standards for certain child relocation requests. One

standard gives the relocating parent a favorable presumption that relocation will be

permitted. But by its terms, the CRA applies only to relocation requests made by a person

"with whom the child resides a majority of the time."

Here, substantial evidence supports the trial court's finding that Ms. Clark, the

relocating parent, was not a person with whom the children resided a majority of the time.

In the published portion of this opinion, we affirm the trial court's conclusion that Ms.

Clark was not entitled to a presumption that relocation would be permitted.

FACTS

Rhonda Clark and David Jackson are the parents of two young children, L.J. and

H.J. In April 2015, the parties finalized their divorce and filed their agreed parenting

plan. The agreed parenting plan designated Ms. Clark as the custodial parent,[1] and

scheduled the children to reside with her a majority of the time. The parties however did

not follow the plan. Instead, the parties shared residential placement equally.

In January 2016, Ms. Clark obtained counsel and sought to change the terms of the

parenting plan. Ms. Clark's attorney sent Mr. Jackson a proposed parenting plan. The

proposed plan generally followed the original plan, but required the parties to follow

certain procedures so as to better communicate with one another. Mr. Jackson did not

disagree with those procedures, but he marked the portion that set forth the children's

residential schedule to reflect the shared schedule that he and Ms. Clark had. In addition,

---

[1] Washington uses the term "custodial parent" solely for purposes of state and federal statutes that require a designation or determination of custody. RCW 26.09.285.

he crossed out that portion of the proposed plan that listed Ms. Clark as the custodial parent. Mr. Jackson then returned the marked proposed plan to Ms. Clark's attorney.

Ms. Clark's attorney then sent a revised parenting plan to Mr. Jackson. The revised plan changed the scheduled residential time as Mr. Jackson had requested, but still designated Ms. Clark as the custodial parent. Mr. Jackson did not want to sign the revised draft. He knew that Ms. Clark was dating a man who lived in Nevada and was concerned that she might move to Nevada and try to take their children with her.

In response to his concerns, Ms. Clark sent Mr. Jackson a text message assuring him that she would not move: "Also, I want [you] to know that I am not moving to Reno. I could easily get a [school] principal job elsewhere. But I know the kids are rooted here with school." Clerk's Papers (CP) at 78-80. Ms. Clark provided Mr. Jackson a further assurance in a later text, "You can always go through with signing. We have 50/50." CP at 117. Mr. Jackson, along with Ms. Clark and her attorney, signed the revised parenting plan. The parties presented the revised parenting plan to the county superior court where they had filed their agreed parenting plan, but that court would not file the revised plan.

3

In May 2016, the parties attempted to mediate various parenting plan issues. The mediation was unsuccessful. On June 9, 2016, Ms. Clark received an offer to become a vice principal in Reno, Nevada. The vice principal job was a significant promotion for her, with more scheduled days, an increase in pay, and with an opportunity for further advancement.

On June 17, 2016, the parties transferred venue to the county superior court of their residence, Spokane County, and registered their original parenting plan with that court. However, Ms. Clark did not file the signed revised plan.

On June 27, 2016, Ms. Clark filed and served on Mr. Jackson a notice of intent to relocate her children to Nevada. On July 26, 2016, a court commissioner held a hearing for temporary orders. The commissioner found that Ms. Clark's request to relocate the children would likely not be granted, and denied Ms. Clark's request for her children to relocate prior to a fact-finding hearing.

On August 9, 2016, Ms. Clark accepted the job in Nevada. Ms. Clark moved to revise the commissioner's ruling, and the trial court denied her motion. The trial court then scheduled a fact-finding hearing to begin October 24, 2016.

At the hearing, both parties presented witnesses who provided testimony both supporting and opposing relocation. During the hearing, Mr. Jackson testified that he and

Ms. Clark shared residential time with their children equally. Mr. Jackson also cross-examined Ms. Clark with her prior deposition testimony. In that testimony, Ms. Clark had admitted that the parenting schedule set forth in the revised and signed parenting plan was the schedule that she and Mr. Jackson had generally followed since the divorce. In addition, several of her text messages were admitted, including the text message where she described the revised parenting plan as "50/50." CP at 117.

At the conclusion of the fact-finding hearing, the trial court advised the parties that it wished to review the trial transcript and scheduled its oral ruling for mid-November. In its November ruling, the trial court meticulously set forth the background of the case, the legal framework, and explained its resolution of the conflicting evidence. The trial court found that the parties shared residential time with the children equally. The trial court found Mr. Jackson's testimony on this point credible, and noted it was consistent with other evidence, such as the lack of a child support transfer payment, and Ms. Clark's various admissions. Based on its finding that the children did not reside with Ms. Clark a majority of the time, the trial court concluded that Ms. Clark was not entitled to the CRA's presumption that relocation would be permitted.

The trial court then addressed whether the children would be permitted to relocate with Ms. Clark to Nevada. In addressing this issue, the trial court discussed the 11 factors

5

set forth in RCW 26.09.520. After discussing each factor, the trial court determined that the detrimental effect of the relocation would outweigh the benefit of the change to the children and Ms. Clark. The trial court also determined that the factors against relocating the children weighed so heavy that it would have denied relocation even had Ms. Clark been entitled to the CRA's presumption. The trial court later entered an order consistent with its oral ruling, together with supporting findings and conclusions.

Ms. Clark appealed.

## ANALYSIS

### A.     APPLICABILITY OF THE CRA AND ITS PRESUMPTION

This court reviews a trial court's relocation decision for abuse of discretion. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A trial court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012). This can occur when a trial court applies an incorrect legal standard, substantial evidence does not support its findings, or the findings do not meet the requirements of the correct standard. *Horner*, 151 Wn.2d at 894.

Ms. Clark contends that the trial court abused its discretion by applying the wrong legal standard. She contends that the parenting plan's designation of her as the custodial

6

parent entitles her to a presumption that relocation will be permitted. She relies on *In re Marriage of Fahey*, 164 Wn. App. 42, 262 P.3d 128 (2011). For the reasons explained below, we agree with the dissent in *Fahey* that the CRA and its presumption apply only to "a person with whom a child resides a majority of the time." RCW 26.09.430.

### 1. Legal principles

The CRA is codified at RCW 26.09.405-.560. The CRA sets forth notice requirements and standards applicable to certain child relocation requests. RCW 26.09.430 provides: "[A] person with whom the child resides a majority of the time shall notify every other person entitled to residential time or visitation with the child under a court order if the person intends to relocate." If an interested person objects, the trial court must then conduct a fact-finding hearing. RCW 26.09.520.

The CRA provides "a rebuttable presumption that the intended relocation of the child will be permitted." *Id*. At the fact-finding hearing, the objecting person may rebut this presumption by showing that "the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon [10][2] factors." *Id.* The CRA permits the relocating parent's interest to be considered because it recognizes

---

[2] The 11th factor does not apply at the fact-finding hearing.

the presumption that a fit parent acts in the best interest of his or her child. *Horner*, 151 Wn.2d at 895.

### 2.       *We disapprove of* Fahey

In *Fahey*, the parties' parenting plan listed the mother as the custodial parent and scheduled the children to live with her a majority of the time. *Fahey*, 164 Wn. App. at 47. Seven years after the plan was entered, the mother provided notice to the father of her intent to have the children relocate with her to Omak, Washington. *Id.* at 47-48. The father, who lived in Edmonds, Washington, objected. *Id.* At the fact-finding hearing, the father presented evidence that despite the terms of the parenting plan, the children actually spent more time with him. *Id*. at 49-51. The majority noted that "the plain language of the child relocation statutes" is triggered by the relocation of a person "'with whom the child resides a majority of the time.'" *Id.* at 58 (quoting RCW 26.09.430). Inexplicably, the majority then held that whether a child resides with the relocating person a majority of the time is answered by the parenting plan's designation of custodial parent, not where the children actually reside. *Id.* at 59-60.

Judge Armstrong issued a strong dissent. Quoting RCW 26.09.430, he emphasized that the relocation statutes and the presumption permitting relocation applied only to a person "'with whom [a] child resides a majority of the time.'" *Id.* at 70 (Armstrong, J.,

dissenting) (alteration in original). He noted that whether a parent has a child a majority

of the time is a factual question, and acknowledged that the designation of custodial

parent is a consideration in answering that question. *Id.* at 71.

> [But] no case has held that the wording of a parenting plan controls
> over the reality of where the children reside a majority of the time. And the
> statute is clear that the presumption works in favor of the parent "with
> whom the child *resides* a majority of the time," not the parent with whom
> the child is *scheduled to reside* a majority of the time. If the trial court and
> the majority are correct, a parenting plan's designation of the primary
> residential parent would control even if the children actually spent 90
> percent of their time with the nondesignated parent.

*Id.* at 71 (citation omitted).[3]

*State v. Chapman*, 140 Wn.2d 436, 450, 998 P.2d 282 (2000) (footnotes omitted)

explains how we must determine the meaning of a statute:

> To determine the meaning of a statute, courts apply the general rules
> of statutory construction to ascertain and carry out the intent of the
> Legislature. If the language of a statute is clear on its face, courts must give
> effect to its plain meaning and should assume the Legislature means exactly
> what it says. If a statue is unambiguous, its meaning must be derived from
> the wording of the statute itself. A statute that is clear on its face is not
> subject to judicial interpretation.

---

[3] Because the CRA did not apply, Judge Armstrong concluded that the trial court should have analyzed whether the existing plan should be modified under the criteria in RCW 26.09.260. *Fahey*, 164 Wn. App. at 73 (Armstrong, J., dissenting); *see In re Marriage of Coy*, 160 Wn. App. 797, 804, 248 P.3d 1101 (2011) ("After a trial court enters a final parenting plan, and neither party appeals it, the plan can be modified only under RCW 26.09.260.").

The CRA is clear. The CRA and its presumption permitting relocation apply only when the person relocating is "a person with whom the child resides a majority of the time." RCW 26.09.430. This is consistent with the notion that a fit parent is presumed to be acting in the best interest of his or her child: In situations where residential placement is shared, both parents are presumptively fit, and neither would be entitled to a favorable presumption. *See In re Marriage of Worthley*, 198 Wn. App. 419, 431, 393 P.3d 859 (2017) (Where "both parents are equally entrusted to act in the child's best interests," the CRA presumption in favor of the relocating parent is inapplicable.).

We agree with Judge Armstrong. The CRA and the presumption permitting relocation apply only to a person with whom the child resides a majority of the time. The designation of custodial parent is a consideration in answering whether the child resides a majority of the time with the relocating parent; but where the child *resides*, rather than is *scheduled* to reside, is the factual question that must be answered.

### 3.     *Application of legal principles*

Here, the parents had a final parenting plan in place that designated Ms. Clark as the custodial parent with whom the children lived a majority of the time. The trial court, however, was persuaded that the parties shared residential time with their children equally. Although Ms. Clark assigns error to this finding, substantial evidence supports

it. Here, Mr. Jackson testified that he and Ms. Clark shared residential time equally from the very beginning. His testimony was consistent with the lack of a child support transfer payment, Ms. Clark's deposition testimony in which she admitted that the revised plan was consistent with the parenting schedule they generally followed, and Ms. Clark's text message describing the plan as "50/50." We conclude that the trial court properly denied Ms. Clark the statutory presumption permitting relocation.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Because the CRA does not apply, the trial court should have either dismissed Ms. Clark's CRA request or, because a fact-finding hearing had already occurred, analyzed Ms. Clark's request as one for a major modification of the parenting plan under RCW 26.09.260. *See Schuster v. Schuster*, 90 Wn.2d 626, 628-29, 585 P.2d 130 (1978) (A final parenting plan may be modified only in accordance with RCW 26.09.260.). Either way, Ms. Clark's contentions that the trial court erred in its weighing the RCW 26.09.520 factors are moot. But should Ms. Clark ask the trial court to analyze her

11

relocation request under RCW 26.09.260, the parties need to be able to know what evidence was properly admitted or excluded at the hearing. For this reason, we address the trial court's contested evidentiary rulings.

  B.  THE TRIAL COURT'S CONTESTED EVIDENTIARY RULINGS

  Ms. Clark challenges three trial court evidentiary rulings. All three involve whether the evidence excluded or admitted consisted of offers of compromise, inadmissible under ER 408. We review such rulings for abuse of discretion. *Klotz v. Dehkhoda*, 134 Wn. App. 261, 271, 141 P.3d 67 (2006).

  ER 408 provides:

>   In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . . This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

  More succinctly, the rule excludes evidence of conduct or statements made in settlement negotiations to prove liability. *Klotz*, 134 Wn. App. at 271. It does not exclude settlement evidence offered for another purpose if the evidence is otherwise

admissible under the rules. *Id.*; *see also Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 264, 778 P.2d 1031 (1989).

### 1. Exclusion of Mr. Jackson's letter

Ms. Clark contends the trial court erred by refusing to admit a letter that Mr. Jackson sent to her around the time of mediation. The letter was entitled, "'Jackson . . . Modification/Mediation.'" Report of Proceedings (Oct. 24, 2016) at 60.

Ms. Clark argued for the letter's admissibility at the hearing. She argued it was relevant to contradict Mr. Jackson's assertion at trial that he never proposed that one child live in Washington while the other live in Nevada. Ms. Clark argued that she did not receive, see, or read the letter until after the May 2016 mediation. The record does not reflect when Mr. Jackson sent the letter to her. Mr. Jackson objected to the letter's admission under ER 408. The trial court sustained Mr. Jackson's objection.

Ms. Clark did not have the letter pre-marked so as to be part of the record. For this reason, we do not adequately know its contents. Nor did the parties clarify when Mr. Jackson sent it. For these reasons, the record is inadequate for us to review the claimed error. *Story v. Shelter Bay Co.*, 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

> 2. *Admission of exhibits 26 and 25*

Ms. Clark next contends the trial court erred by admitting exhibit 26, which was the draft parenting plan sent to Mr. Jackson on which he noted his comments. She also contends the trial court erred by admitting exhibit 25, which was the revised and signed parenting plan. We disagree with both contentions.

> a. *Exhibit 26*

Exhibit 26 contains the same parenting schedule and custodial parent designation as the parties' original parenting plan. It also shows that Mr. Jackson marked the proposed plan to reflect the equally shared residential schedule and struck the plan's designation of Ms. Clark as the custodial parent.

Ms. Clark's reiteration of the original parenting plan was not an admission of liability. Nor were Mr. Jackson's markings an admission of liability. Rather, Mr. Jackson's markings were relevant and admissible to show that his assertion the parties equally shared residential placement was not a fabricated recent contention. We conclude that the trial court did not abuse its discretion by admitting exhibit 26.

b.      *Exhibit 25*

Exhibit 25 is the revised parenting plan that was signed by the parties and Ms. Clark's attorney.  It designates Ms. Clark as the custodial parent, but also provides for an equally shared residential schedule.  The trial court admitted the revised parenting plan over Ms. Clark's objection.

Mr. Jackson introduced the revised and signed parenting plan to prove that the children did not reside with Ms. Clark a majority of the time.  Although this claim was disputed at the fact-finding hearing, there is no evidence it was disputed in January 2016 when the revised parenting plan was signed.  Notably, Ms. Clark admitted in her deposition that she and Mr. Jackson generally shared residential time with their children equally.  Because this fact had not been disputed prior to the agreement's signing, this aspect of exhibit 25 was not a compromise or an offer of compromise.[4]  We conclude that the trial court did not abuse its discretion by admitting exhibit 25.

---

[4] Ms. Clark inadvertently concedes this point in her brief: "She sought an amended parenting plan because Mr. Jackson's harassing behavior escalated and he attempted to manipulate her time with the children and she felt that there needed to be restrictions regarding communication. . . . The purpose of the amended parenting plan . . . was to add other restrictions."  Appellant's Br. at 43.

No. 35027-4-III
*In re Marriage of Jackson & Clark*

C.    ATTORNEY FEES

Mr. Jackson requests an award of attorney fees on appeal. He cites RAP 18.1 and RCW 26.09.140. He fails to provide any argument supporting his request. We therefore deny it. *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

_Lawrence-Berrey, C.J._
Lawrence-Berrey, C.J.

WE CONCUR:

_Siddoway, J._
Siddoway, J.

_Pennell, J._
Pennell, J.

16