FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 DEC 24 AM 9: 01

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

|  |  |  |
|---|---|---|
| ETHAN JOSEPH BERGERSON, | ) | No. 77407-7-I |
|  | ) |  |
| Appellant, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | PUBLISHED OPINION |
| MARIA TERESA ZURBANO, | ) |  |
|  | ) | FILED: December 24, 2018 |
| Respondent. | ) |  |
|  | ) |  |

VERELLEN, J. — The child relocation act (CRA)[1] does not apply to a 50/50 parenting plan. The statute still does not apply even though the parents added language to the plan that either one of them must give notice of relocation under the CRA.

Ethan Bergerson appeals the trial court's dismissal of his petition to relocate, which he submitted pursuant to the CRA. But the trial court did not commit any reversible error. First, it correctly followed In re Marriage of Worthley[2] in declining to apply the CRA to a 50/50 parenting plan. Second, parties to a 50/50 parenting plan cannot use an agreement on notice pursuant to the CRA to avoid the heightened statutory protections for the child's interests that otherwise would apply to a major change in a residential schedule.

---

[1] RCW 26.09.405-.560.

[2] 198 Wn. App. 419, 393 P.3d 859 (2017).

Therefore, we affirm.

## FACTS

Ethan Bergerson and Maria Zurbano have one child. In 2012, they divorced and agreed to a parenting plan. From the time of divorce through mid-2016, as provided in the parenting plan schedule, the child resided a majority of the time with his mother. In 2016, the court approved a new, mutually agreed-upon parenting plan. The plan changed so "[r]esidential time shall be equally shared on a 50/50 basis, adhering to a 2-2-5-5 biweekly schedule."[3] The parents also share joint decision making. The plan designated both parents as custodians with "equal rights and responsibilities . . . and wherever the law allows be deemed to be joint custodians. . . . for purposes of all state and federal statutes which require a designation or determination of custody."[4]

The mandatory portion of the 2016 plan summarizing the CRA included two customized provisions. The first states, "If either parent plans to move, that person shall give notice to every person entitled to court ordered time with the child."[5] The second states, "Because each parent has the child 50 [percent] of the time, this provision will be deemed to apply equally to both parents. That is, either parent must give the requisite notice to the other and to all affected parties as specified by the statute."[6]

---

[3] Clerk's Papers (CP) at 2.

[4] CP at 5-6.

[5] CP at 6.

[6] CP at 7.

2

On April 26, 2017, the father filed a "Notice of Intent to Move with Children (Relocation)" form pursuant to the CRA.[7] He wanted to move from Seattle to Baltimore with his new wife and his son because his wife matched into a five-year residency in emergency medicine and pediatrics at the University of Maryland Medical Center beginning in late June of 2017.

The father served the mother with notice of his relocation petition on April 30, 2017. One month later, the mother filed an objection. At a hearing on the father's petition, the court concluded that the CRA did not apply and that the father had not shown adequate cause to hold a modification hearing. The court dismissed both the relocation petition and the mother's objection because they were made pursuant to the inapplicable CRA. The court granted the father's motion to reconsider but again denied his petition and dismissed the proceeding.

The father appeals.

ANALYSIS

Whether a court erred in its interpretation and application of a statute is a question of law we review de novo.[8] Interpretation of a parenting plan is also a question of law we review de novo.[9] If a parent seeks to modify a parenting plan,

---

[7] CP at 117.

[8] In re Welfare of A.G., 155 Wn. App. 578, 596, 229 P.3d 935 (2010); In re Marriage of Wilson, 117 Wn. App. 40, 45, 68 P.3d 1121 (2003).

[9] Kirshenbaum v. Kirshenbaum, 84 Wn. App. 798, 803, 929 P.2d 1204 (1997); see In re Marriage of Cota, 177 Wn. App. 527, 534, 312 P.3d 695 (2013) ("'Interpretation of a child support order is a question of law that we review de novo.'") (quoting In re Marriage of Sagner, 159 Wn. App. 741, 749, 247 P.3d 444 (2011)).

a court has discretion when deciding whether adequate cause exists to hold a modification hearing.[10] A court abuses its discretion if its decision is "based on untenable grounds or untenable reasons."[11]

I. Applicability of the CRA to a 50/50 Parenting Plan

The CRA defines "relocate" as "a change in principal residence either permanently or for a protracted period of time."[12] When a parent with whom the child is scheduled in the parenting plan to reside a majority of the time decides to relocate, he or she must notify anyone "entitled to residential time or visitation with the child."[13] Relocations are presumptively permitted and must be allowed if no one objects within 30 days of receiving notice.[14]

However, where the parties have a 50/50 parenting plan, the plain language of the CRA prevents its application. "In a 50/50 residential schedule, neither parent is 'a person with whom the child resides a majority of the time,' so neither parent is entitled to the CRA's presumption permitting relocation."[15]

In this case, both parents equally share residential time on a 50/50 basis as well as being joint decision makers. Because the court found the parties have a 50/50 parenting plan and the CRA does not apply to 50/50 plans, the father cannot

---

[10] In re Parentage of Jannot, 149 Wn.2d 123, 128, 65 P.3d 664 (2003).

[11] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[12] RCW 26.09.410(2).

[13] RCW 26.09.430.

[14] RCW 26.09.500(1), .520.

[15] In re Marriage of Snider, No. 77583-9-I, slip op. at 6 (Wash. Ct. App. Dec. 3, 2018), http://www.courts.wa.gov/opinions/pdf/775839.pdf (quoting RCW 26.09.430).

petition for relocation pursuant to the CRA. Consistent with In re Marriage of Snider[16] and Worthley,[17] the court did not err by dismissing the father's petition.

The father contends the court erred by refusing to consider the best interests of the child when it dismissed his petition. But the court is not required to consider the child's best interests during a procedural adequate cause hearing, and the court has discretion when determining whether a modification hearing is necessary.[18]

The court concluded the father did not make a showing of adequate cause because he petitioned for relocation based only on the CRA rather than following the modification procedures listed in RCW 26.09.260 and .270. The parent seeking modification must submit affidavits to show adequate cause exists to require a modification hearing.[19] The court did not abuse its discretion by declining to hold a modification hearing.[20]

The required showing of adequate cause is a statutory procedural requirement that does not directly implicate the child's best interests.[21] Once adequate cause is established and the court is engaged in an evidentiary modification hearing, then the

---

[16] No. 77583-9-I, slip op. at 6 (Wash. Ct. App. Dec. 3, 2018), http://www.courts.wa.gov/opinions/pdf/775839.pdf.

[17] 198 Wn. App. at 428.

[18] Jannot, 149 Wn.2d at 128.

[19] RCW 26.09.270.

[20] We note the court invited the father "to refile . . . as a motion action and see if you can meet adequate cause in order to be able to go forward," but he appealed instead. Report of Proceedings (July 7, 2017) at 16.

[21] See Jannot, 149 Wn.2d at 128 (holding that courts have discretion when evaluating affidavits setting forth facts supporting the requested modification to determine whether a modification hearing is necessary).

child's best interests come into play. The trial court correctly declined to consider the best interest of the child at this stage of the proceedings.[22]

In the alternative, the father contends the court did not need to hold a modification hearing because he merely sought a "minor modification" pursuant to RCW 26.09.260(5). But minor modifications cannot "change the residence the child is scheduled to reside in the majority of the time."[23] Under the current 50/50 parenting plan, the parties' son does not reside anywhere the "majority of the time." The father's proposed parenting plan would have his son reside with him a majority of the time, unless the mother relocated to within 30 minutes of his residence in Maryland.[24] Because this would significantly change the residence the child is scheduled to reside in a majority of the time, this is not a minor modification.[25]

## II. Applying the CRA to a 50/50 Parenting Plan by Agreement

Regardless of the CRA's own terms, the father argues the customized language in the parenting plan incorporates the CRA by agreement. The narrow issue before us is whether the agreed customized language in this parenting plan

---

[22] The father also argues In re Marriage of Horner, 151 Wn.2d 884, 894, 93 P.3d 124 (2004), requires explicit consideration under the CRA of the child's best interest as measured by all 11 factors in section .520 when dismissing a relocation petition. But Horner is distinguishable because the child in that case was scheduled to reside a majority of the time with the relocating parent, so the CRA applied. Horner, 151 Wn.2d 888 n.2.

[23] RCW 26.09.260(5).

[24] The record does not reveal any prospect of the mother relocating to Maryland.

[25] See Snider, No. 77583-9-I, slip op. at 8-9 (holding a mother's proposed relocation was not minor because it would effectively modify her 50/50 parenting plan to something other than a 50/50 by creating a residence where the children reside a majority of the time).

6

results in application of the CRA. We need not reach the broader and more general question of whether any language contained in 50/50 parenting agreement approved by the court might have some impact on a proposed relocation. Because incorporating the CRA by agreement into this plan, where it is otherwise inapplicable, raises a variety of concerns, we are not persuaded by the father's argument.

Section 3.14 of the parties' 50/50 parenting plan is titled "Summary of RCW 26.09.430-.480, Regarding Relocation of a Child."[26] Most of the language in the section is identical to the form language used in their initial parenting plan and to the notice provisions of the CRA, but the parents agreed on two customized additions. The first addition states, "If either parent plans to move, that person shall give notice to every person entitled to court ordered time with the child."[27] The second addition states, "Because each parent has the child 50 [percent] of the time, this provision will be deemed to apply equally to both parents. That is, either parent must give the requisite notice to the other and to all affected parties as specified by the statute."[28] But the summary itself in section 3.14 does not address whether the CRA's other provisions, such as the statutory presumption and relocation factors in RCW 26.09.520, would apply. The plain language and policy of the CRA suggests they should not.

The CRA eases the process for relocation by the parent with whom the child resides a majority of the time by creating "a rebuttable presumption that the intended

---

[26] CP at 6.

[27] CP at 6.

[28] CP at 7.

7

relocation of the child will be permitted."[29] It "incorporates and relies on [the] traditional presumption" that fit parents act in a child's best interest, so any relocation by the parent with whom the child is scheduled to reside a majority of the time must be in the interests of both that parent and the child.[30]

By contrast, a 50/50 plan is a court-approved endorsement of the parents' equal fitness. When one parent in a 50/50 plan petitions for relocation and the other opposes it, then, consistent with the traditional presumption, both equally fit parents are acting equally in the child's best interest. Because the CRA's rebuttable presumption cannot be logically applied, it is inapplicable to this 50/50 plan.[31]

Even if the parents had expressly agreed to apply the CRA except for the rebuttable presumption, the CRA's relocation factors do not squarely fit their 50/50 plan.[32] A court evaluating a relocation petition following a parental objection "must consider each of the [11] child relocation factors" listed in RCW 26.09.520 to determine "whether the 'detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person.'"[33] Several factors do not fit the parents' 50/50 plan.

---

[29] RCW 26.09.520.

[30] Worthley, 198 Wn. App. at 431.

[31] See In re Marriage of McDermott, 175 Wn. App. 467, 488, 307 P.3d 717 (2013) ("When construing statutes, '[i]t is fundamental that . . . we avoid absurd results.'") (alterations in original) (quoting Lowy v. PeaceHealth, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012)).

[32] See Horner, 151 Wn.2d at 895 n.10 ("Many of the child relocation factors refer to the interests and/or circumstances of the relocating person.").

[33] Id. (quoting RCW 26.09.520).

First, a court would be forced to alter or disregard two of the factors. Factor three states a court must weigh "[w]hether disrupting the contact between the child and the person with whom the child resides *a majority of the time* would be more detrimental to the child than disrupting contact between the child and the person objecting to the relocation."[34] This factor expressly presumes there is a parent with whom the child is scheduled to reside the majority of the time. We cannot rewrite this factor on appeal to apply to the 50/50 plan.[35]

Factor seven states a court must weigh "[t]he quality of life, resources, and opportunities available to the child and to the relocating party in the current and proposed geographic locations."[36] By its plain language, this factor considers only the relocating parent's current and proposed circumstances, with no counterbalanced consideration of the other parent's circumstances. Such a one-sided approach undermines the nonrelocating parent's interests and makes little sense when, as here, equally fit parents are deemed to both be acting in their child's best interests.

Second, parents may not alter by agreement the statutory protections provided for their child by the Parenting Act of 1987[37] and the CRA.[38] As we recognized in In

---

[34] RCW 26.09.520(3) (emphasis added).

[35] Rivard v. State, 168 Wn.2d 775, 783, 231 P.3d 186 (2010) (terms of a statute should not be interpreted to render them meaningless or superfluous).

[36] RCW 26.09.520(7).

[37] Chapter 26.09 RCW.

[38] See Littlefield, 133 Wn.2d at 58 ("[A] trial court is not required to follow the terms of a separation agreement which relate to the parenting of children.") (citing RCW 26.09.070(3)); Hammack v. Hammack, 114 Wn. App. 805, 808, 60 P.3d 663 (2003) ("Courts have found [parental agreements waiving child support] unenforceable even if in a final order agreed upon by the parties and not appealed."). The cases

re Marriage of Adler, parents may waive statutory protections for themselves but not their children.[39] In Adler, a parenting plan provided that for the first seven months of the plan, either party could request review of the residential schedule and decision-making provisions without conducting the usual adequate cause hearing required by RCW 26.09.260(1) and .270.[40] We upheld the provision because the prerequisite adequate cause determination for a modification hearing existed to protect the parents, not the children, from useless evidentiary hearings.[41] "The best interests of

---

Bergerson relies on for this point are not germane because none involve parental waiver of protections for children. In re Marriage of Short, 125 Wn.2d 865, 868-69, 890 P.2d 12 (1995) (childless couple disputing unique terms in a spousal maintenance agreement); In re Marriage of Lee, 176 Wn. App. 678, 688, 310 P.3d 845 (2013) (upholding additional provisions in a spousal maintenance agreement); In re Marriage of Hulscher, 143 Wn. App. 708, 180 P.3d 199 (2008) (upholding additional terms in a spousal maintenance agreement). The father cites In re Marriage of Raskob, 183 Wn. App. 503, 507-09, 334 P.3d 30 (2014) for the proposition that courts uphold agreed-upon modifications to the CRA. But the Raskob court merely enforced an agreed plan provision that the mother, with whom the children were scheduled to reside a majority of the time, give 60 days' notice if she sought to relocate beyond a 30-minute driving distance from the father's residence. In re Marriage of Raskob, 172 Wn. App. 1014, *1 n.5, 2012 WL 5992097 (2012) (unpublished opinion). The agreement to give the nonrelocating parent additional protection did not alter the applicable protections of the child. The father also cites In re Marriage of Grigsby, 112 Wn. App. 1, 57 P.3d 1166 (2002), to support his argument. But the parents in Grigsby explicitly agreed in their Colorado dissolution decree that the mother would have primary residential custody, the plan functioning as a 50/50 residential split. Id. at 4, 16. Thus, while not directly addressed on appeal, the trial court's reliance on the CRA's relocation factors was appropriate because the plan designated a "primary residential custodian."

[39] 131 Wn. App. 717, 723-24, 129 P.3d 293 (2006).

[40] Id. at 721. Although the parent who requested review did so after about 18 months, id. at 720-21, this does not appear to have been an issue on appeal.

[41] Id. at 724.

the children remain protected by the standards in RCW 26.09.260 as applied by the court in the modification hearing."[42]

Relying on Adler, the father contends that the parents' agreement requires us to apply the CRA's relocation factors. So we must consider whether the relocation factors in RCW 26.09.520 provide the same protections to children as the modification statute or the provisions of RCW 26.09.187, which govern residential schedules in the first instance.

The underlying goal of RCW 26.09.187(3) is to protect the best interests of the child.[43] Although RCW 26.09.520 also aims to protect the best interests of the child, the statutes address different considerations.[44] For example, relocation factor (5) in RCW 26.09.520 considers "[t]he reasons of each person for seeking or opposing the relocation and the good faith of each of the parties in requesting or opposing the relocation" and does not consider the child's interests at all.[45]

In addition, the criteria from RCW 26.09.187(3)(a) are weighted differently than those in RCW 26.09.520. Central among the factors in RCW 26.09.187(3)(a)(i) is

---

[42] Id.

[43] See RCW 26.09.002 ("[T]he best interest of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents.").

[44] See Horner, 151 Wn.2d at 894 n.9 ("Factors 1, 3, 6, and 8 [of RCW 26.09.520] focus on the child's interests. Factors 7, 9, and 10 focus on the family and its material needs. Factors 2, 4, and 11 focus on special circumstances. Factor 5 considers the reasons of the relocating and objecting parties.").

[45] RCW 26.09.520(5); see Horner, 151 Wn.2d at 894 (noting that under the CRA "the standard for relocation decisions is not only the best interests of the child" because "the interests and circumstances of the relocating person" are "[p]articularly important" as well).

11

"[t]he relative strength, nature, and stability of the child's relationship with each parent." The legislature requires that this factor "be given the greatest weight."[46] Weighting the child's relationships with his parents more than other factors provides considerable protection to the child's interest in stability. By contrast, the factors listed in RCW 26.09.520 "are not weighted." This significant distinction would be lost if we allowed the parents to change by agreement the criteria for their son's residential schedule.

Because of these concerns, we decline to accept the father's argument that some version of the CRA applies to his 50/50 parenting plan due to the customized language agreed upon by the parties.

III. Law of the Case

The father also argues the law of the case doctrine requires that the CRA continue to apply to his parenting plan. He asserts, "When the trial court signed the 2016 parenting plan, it adopted all of the provisions therein, including the stipulation to the application of the CRA."[47]

"The term 'law of the case' means different things in different circumstances."[48] First, it refers to the effect of jury instructions in a trial.[49] Second, it

---

[46] RCW 26.09.187(3)(a).

[47] App. Br. at 30.

[48] Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 113, 829 P.2d 746 (1992); 14A K. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35.55, at 589 (2nd ed. 2009).

[49] Lutheran Day Care, 119 Wn.2d at 113.

refers to the binding effect of appellate determinations on remand.[50] Third, it refers to the principle that an appellate court will generally not reconsider the rules of law it announced in a prior determination of the same case.[51]

The father's argument does not fit within the law of the case doctrine. The approval of the 2016 parenting plan was not a legal ruling on whether the CRA applies to a 50/50 parenting plan.

## IV. Attorney Fees on Appeal

The mother requests attorney fees pursuant to RAP 18.1 and RCW 26.09.140. RAP 18.1(c) requires that a party requesting statutory fees submit a financial affidavit "no later than 10 days prior to the date . . . set for oral argument" where applicable law mandates consideration of a party's financial resources. RCW 26.09.140 authorizes awards of attorney fees "considering the financial resources of both parties." The mother failed to submit a financial affidavit. We decline to award attorney fees.

## V. Motion to File Supplemental Assignments of Error

The father moves to file supplemental assignments of error in his reply brief, and the mother moves to strike his reply as a nonconforming brief in violation of RAP 10.3(c).

The father filed his appellant's brief on April 9, 2018, and the mother filed her respondent's brief on June 14. Two weeks later, Division III of this court published In

---

[50] Id.
[51] Id.

13

re the Marriage of Jackson.[52] Jackson states that courts considering a relocation petition should determine where the child has actually been residing, regardless of the parenting plan's designations, before deciding whether to address the merits of the relocation petition.[53] He argues Jackson represents a change in the law and, relying on Jackson, the father moves to add the supplemental assignments of error contained in the reply brief he simultaneously filed. The mother moves to strike the reply brief and seeks sanctions against the father for filing a nonconforming brief.

A reply brief must be "limited to a response to the issues in the brief to which the reply brief is directed."[54] Generally, a court will not review an issue raised and argued for the first time in a reply brief.[55] But appellate courts have discretion to consider a case on its merits, despite technical flaws.[56] RAP 1.2 allows a court to waive the rules "to serve the ends of justice," and courts should "liberally interpret[ ]" the rules "to promote justice and facilitate the decision of cases on the merits."[57] Accordingly, a court should exercise its discretion to reach an appeal's merits unless there are compelling reasons not to do so, such as prejudice to the respondent.[58]

---

[52] 4 Wn. App. 2d 212, 220, 421 P.3d 477 (2018).

[53] Id.

[54] RAP 10.3(c).

[55] Matter of Rhem, 188 Wn.2d 321, 327, 394 P.3d 367 (2017); RAP 10.3(c).

[56] State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995) (citing RAP 1.2(a)).

[57] RAP 1.2(a), (c).

[58] Olson, 126 Wn.2d at 323

We deny the father's motion because the mother would be prejudiced by considering his proposed supplemental assignments of error in his reply brief.[59] The father predicated his initial arguments on the parties sharing a 50/50 parenting plan,[60] and the respondent's brief does the same. Now he seeks to add a completely different argument. The father contends that Jackson addresses new legal issues, but the same issues decided in Jackson were considered in a 2011 case cited in the appellant's brief, In re Marriage of Fahey.[61] The father could have raised these issues in his opening brief, but he chose not to.[62]

We deny the motion to file supplemental assignments of error. We decline to consider the portions of the reply brief addressing the proposed supplemental assignments of error, so there is no need to formally strike the father's reply brief. We decline to sanction the father for filing a nonconforming reply brief in these circumstances.

---

[59] RAP 10.1(b); In re Dependency of O.J., 88 Wn. App. 690, 693 n.1, 947 P.2d 252 (1997) ("It would be unfair, however, to allow the appellant to use those delinquent assignments of error to raise any new issues not addressed in its opening brief because the respondent has had no opportunity to reply to them.").

[60] See, e.g., App. Br. at 1 ("This appeal asks whether the court has authority to proceed under the Child Relocation Act (CRA) when the parties have an agreed 50-50 parenting plan that specifically incorporates and customizes portions of the CRA stipulating that either parent may seek to relocate with child.").

[61] 164 Wn. App. 42, 55, 262 P.3d 128 (2011) ("[The father] argues that because, as a matter of fact, [his children] resided with him a majority of the time since 2006, [the mother] cannot invoke the relocation statutes and is not entitled to the rebuttable presumption favoring her relocation decision.").

[62] The father was clearly aware of this theory, as revealed in his motion for reconsideration in the trial court: "[The mother's] frequent travel for work results in many missed residential days, which could and may have forfeited the 50-50 status of the parenting plan. . . . If the parenting plan was not 50-50, Worthley would not apply. Thus, the CRA would apply." CP at 290.

15

For the foregoing reasons, we affirm.

WE CONCUR: