

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

TOMMY HOWE,                            )
                                       )       No.  40201-1-III
                Respondent,            )
                                       )
        v.                             )
                                       )
STATE OF WASHINGTON                    )       UNPUBLISHED OPINION
DEPARTMENT OF SOCIAL AND               )
HEALTH SERVICES,                       )
                                       )
                Appellant.             )

STAAB, J. — Tommy Howe appeals a finding made by the Department of Social and Health Services (DSHS) that he mentally abused his daughter, D.H.,[1] by pointing a firearm at her. The finding was made following an investigation conducted by DSHS. This finding was affirmed by an administrative law judge (ALJ) and Howe's subsequent petition for review was also affirmed by the board of appeals (Board). Howe then sought review in superior court, which reversed the finding. DSHS now appeals to this court.

---

[1] D.H. is a vulnerable adult and is identified by initials to protect her privacy.

Howe assigns error to the finding that he pointed a gun at D.H. and contends it was not supported by substantial evidence, largely arguing this court should reweigh evidence and witness credibility.[2]

We hold that the Board's contested finding was supported by substantial evidence. Our review on appeal does not include credibility determinations or judgments on the policy decisions to move forward with findings that will prevent Howe from caring for his daughter in the future.

BACKGROUND

The majority of this background section is taken from the unchallenged findings of fact from the Board's decision. Clerk's Papers (CP) at 31-50.

Tommy Howe is the father of D.H., who has resided with Howe her entire life. In July 2016, when D.H. was 18 years old, Howe was appointed full guardianship of D.H.'s person and estate because she was deemed incapacitated.

---

[2] DSHS is considered the "appellant" because it is appealing the superior court's decision that reversed the Board's finding. However, because this court reviews the Board's decision, not the superior court's, our general order regarding modified procedures for appeals requires Howe to file an opening brief assigning error to the Board's finding despite being considered the respondent. *See* General Order of Division III, *In re Modified Procedures for Appeals Under The Administrative Procedures Act*, ch. 34.05 RCW (Wash. Ct. App. Jan. 5, 2024), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders&div=III.

In 2020, D.H. asked Howe if two of her friends, Ben and Mary, could stay with them temporarily because they had nowhere else to go. Howe agreed and eventually more of D.H.'s friends began staying at their house despite the fact that Howe only gave Ben and Mary permission. Eventually, Ben and Mary left, but the other friends remained.

Howe repeatedly told D.H.'s friends to leave, but they refused. At some point in late September or early October 2020, Howe called the sheriff and asked for assistance getting the other friends out of the house. The sheriff told Howe that he could not have them removed, because D.H., who was another adult living in the home, invited them. The sheriff advised Howe that if D.H. did not ask her friends to leave, the only way he could remove them from the property was if Howe legally evicted them and D.H.

Toward the end of October or early November 2020, Howe began the eviction process to have D.H. and her friends removed from the property. Eventually all of them were served with the eviction notice informing them they needed to vacate the property by November 30, 2020.

On November 27, 2020, most of the friends had left the property, except for D.H. and an individual named Andrew. Later that evening, S.R.[3] contacted D.H. and Andrew, informing them that she was going to the house so that she could collect some of her

---

[3] S.R. is a vulnerable adult.

personal property. D.H. asked S.R. not to come over because it was late, and Howe was already in bed. Despite this, S.R. ignored the directive not to come over.

Around 11:00 p.m., S.R. and another individual, Johnny, arrived at Howe's home to collect S.R.'s property. Howe was eventually awakened when he heard arguing. Howe grabbed the gun that he kept beside his bed, and lowered it to his side. Howe saw D.H. and Andrew arguing with Johnny, who appeared to be trying to force his way into the house. Howe told Johnny he needed to get off his property, and when Johnny did not leave, Howe raised the gun and pointed it at Johnny. Johnny then left the home.

After Johnny left, Howe heard Andrew "slamming things around in the back of the house." CP at 34. Andrew then came out carrying a crate of S.R.'s belongings. Howe informed Andrew that S.R. and Johnny were gone and that he could put the crate down. Andrew did not put the crate down and Howe thought Andrew intended to continue the confrontation with Johnny and S.R. Howe raised the gun, pointed it at Andrew, and said "[p]ut it down" to which Andrew "turned around and put [the crate] through a brand new door." CP at 35.

Officers eventually arrived because they received a call that Howe had pointed a black Colt .45 pistol at Andrew, S.R., D.H., and Johnny. When Deputy Cameron Craddock was responding to Howe' residence, he received another call from Johnny, who reported that Howe had pointed a gun at him and S.R. Deputy Craddock filed a report, which stated:

4

I contacted them and they briefly explained [Andrew's] ex girlfriend came over to the residence which caused an altercation. During the altercation [Howe] pointed a black handgun at [Andrew], D.H., S.R., and Johnny.

CP at 35. However, the report did not state whether the above information was reported by Andrew, D.H., or both.

Deputy Craddock placed Andrew and D.H. in his vehicle and requested that Howe come out of the house. Howe exited the house unarmed and explained that "some people showed up at his house and tried to force their way into the house," but no gun was mentioned. CP at 36. Howe was advised of his *Miranda*[4] rights and placed in a patrol car.

Deputy Craddock returned to Andrew and D.H. and asked them to explain what happened. Andrew explained that he went to his room to collect S.R.'s belongings and when he came out, Howe had a gun pointed at his head, told him to put the items down, and threatened to shoot him. D.H. then grabbed Howe and tried to make him put the gun down. Andrew explained that Howe then pointed the gun at D.H.'s head and threatened to shoot her. D.H. explained the incident nearly the same as Andrew. D.H. stated that when Howe pointed the gun at her head, he said something to the effect of "I'll put a bullet in your head too." CP at 36.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Deputy Craddock went back to speak with Howe and asked Howe why he failed to mention a gun during the initial interview. Howe explained he felt threatened by the people trying to enter his home. He acknowledged he did point the gun at Andrew, S.R., and Johnny, but did not see anyone else behind Johnny. However, Howe denied pointing the gun at D.H. Deputy Craddock seized the firearm, and Howe was transported to jail where he was booked on three counts of second degree assault domestic violence.

On November 28, 2020, Deputy Craddock contacted S.R. and Johnny. S.R. and Johnny both described the incident the same as D.H. and Andrew did, up to the point where Howe pointed the gun at Johnny. S.R. explained that Howe pointed a small black handgun at her vehicle.

*Mental Abuse of a Vulnerable Adult Investigation*

Following Howe's filing of the eviction notice, DSHS's Adult Protective Services (APS) Division became involved when APS received an online intake that alleged Howe mentally abused D.H. Specifically, there was a note that stated that Howe put a loaded gun to D.H.'s head over the weekend. A few days later, APS received another intake report that was from a phone call from a member of the public, and D.H. The report claimed that Howe, the week prior, threatened D.H. by pointing a gun at her and the person who called in the report.

Because of both allegations, Investigator Wendi Hunt visited the home to interview D.H. D.H. agreed to discuss the allegations, but she wanted Andrew to stay

6

with her during the interview. D.H. explained what happened, leading up to the point where Howe pointed a gun at Andrew and asked him to drop the crate of belongings he was holding. After Andrew dropped the crate, D.H. explained that she grabbed Howe's arm to try to get him to drop the gun. D.H. said that Howe then pointed the gun at her forehead and said, "I'll put a bullet in your head too." CP at 40.

On March 17, 2021, APS mailed a notice of initial finding of mental abuse by certified mail to Howe. In June 2021, all criminal charges against Howe were dismissed. Howe then requested a hearing to contest the substantiated finding of mental abuse.

The following year, on "September 1, 2021, D.H. signed a typed statement titled Clarification to my Adult Protective Services Investigation Statements on December 4, 2020." CP at 41. D.H. reiterated her story but stated that Howe had the gun pointed at Andrew when Andrew got mad and threw a crate of food, breaking the bedroom door. Andrew and Howe continued to yell at each other so D.H. grabbed Howe's arm to stop him from pointing the gun at Andrew. However, this time, D.H. explained that Howe told her to "keep [her] voice down" and to "back off." CP at 41. D.H. did not state that Howe pointed a gun at her head in this statement.

*Procedural History for DSHS's Finding of Mental Abuse*

On December 5, 2022, an ALJ held an administrative hearing to determine whether the finding of mental abuse or neglect should be upheld. D.H. testified that Howe did not point a gun at her or threaten to shoot her and that she did not recall telling

7

Officer Craddock that Howe tried to shoot her. Howe also testified at the hearing, stating that he did not point his gun at D.H. or threaten to shoot her. Ultimately, the ALJ affirmed the substantiated finding of mental abuse. Howe filed a request for review of the initial decision and the Board affirmed the ALJ's decision, largely adopting the ALJ's findings and conclusions. Howe subsequently filed a petition for review in superior court, which overturned the Board's final order, determining that the challenged finding of mental abuse was not supported by substantial evidence.

In overturning the order, the superior court explained that the statements made in Deputy Craddock's report were "not reliable" and that the evidence regarding whether Howe pointed a gun at D.H. was "inconsistent." CP at 536. Furthermore, it noted other statements the ALJ credited to D.H., stating they were "not reliable and therefore are not substantial evidence." CP at 537. Finally, the superior court recognized D.H.'s susceptibility to manipulation and that "little to no consideration was given to the circumstances under which those statements were made" and that ample evidence existed that D.H. was being manipulated by Andrew. In sum, the superior court found the "record contain[ed] too many inconsistencies" to support a finding that Howe mentally abused D.H. by pointing a gun at her.

DSHS timely appeals.

ANALYSIS

Howe contends that substantial evidence does not support the finding that Howe mentally abused his daughter. In doing so, he argues the statements D.H. gave immediately after the incident were no more credible than those she gave later in the case. We find substantial evidence supported the Board's findings.

*A. Standard of Review*

Howe appeals a final agency action under RCW 34.05.570(3). A party aggrieved by a final Board decision may appeal that decision in superior court as provided in chapter 34.05 RCW, the Administrative Procedure Act (APA). "On appeal, this court reviews the Board's decision, not the decision of the superior court, . . . based on the record made before the Board." *King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). In doing so, "'[w]e apply the standards of [chapter 34.05 RCW] directly to the record before the agency, sitting in the same position as the superior court.'" *Id.* (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998)).

The challenger of an agency action bears the burden of demonstrating its invalidity. RCW 34.05.570(1)(a). We grant relief only if this court determines that the challenger has been substantially prejudiced by the action he complains of. RCW 34.05.570(1)(d). To obtain relief from an agency order, RCW 34.05.570(3) provides nine separate standards. Among the bases for relief and relevant here, this court may grant

9

relief if the "order is not supported by evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e).

In reviewing the agency's findings of fact under RCW 34.05.570(3)(e), the test of substantial evidence is "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d at 553 (quoting *Callecod v. Wash. State Patrol*, 84 Wn. App. 663, 673, 929 P.2d 510 (1997)). In evaluating whether substantial evidence exists, this court does "not reweigh evidence or judge witness credibility, but instead defer[s] to the agency's broad discretion in weighing the evidence." *Whidbey Env't Action Network v. Growth Mgmt. Hr'gs Bd.*, 14 Wn. App. 2d 514, 526, 471 P.3d 960 (2020). The Board's unchallenged findings of fact are verities on appeal. *See Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 100, 11 P.3d 726 (2000).

### B. Finding of Abuse of a Vulnerable Adult

DSHS received allegations that Howe had mentally abused a vulnerable adult. Chapter 74.34 RCW, titled "Abuse of Vulnerable Adults" establishes a system for reporting instances of abandonment, abuse, exploitation, financial exploitation, or neglect of a vulnerable adult. "Abuse" means "the intentional, willful, or reckless action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult." RCW 74.34.020(2). Abuse can include "mental abuse," which means an "intentional, willful, or reckless verbal or nonverbal action that threatens, humiliates,

harasses, coerces, intimidates, isolates, unreasonably confines, or punishes a vulnerable

adult." RCW 74.34.020(2)(c).

Here, it is undisputed that D.H. is a vulnerable adult and that pointing a gun at a

vulnerable adult constitutes mental abuse. However, Howe argues that substantial

evidence does not support the finding that he pointed a gun at D.H.

As an initial matter, Howe does not assign error to any of the Board's findings of

fact other than the finding that he pointed a gun at D.H. As such, the remaining findings

will be treated as verities. *See City of Seattle v. Swanson*, 193 Wn. App. 795, 816, 373

P.3d 342 (2016) ("Unchallenged findings are verities on appeal.").

The unchallenged findings support the finding that Howe pointed a gun at D.H.

On the night in question, officers received a call because Howe had pointed a black Colt

.45 pistol at Andrew, S.R., D.H. and Johnny. When Deputy Craddock arrived, he filed a

report that stated there was an altercation and that Howe "pointed a black handgun" at

Andrew, D.H., S.R., and Johnny. CP at 35. Furthermore, Deputy Craddock spoke to

Andrew and D.H. directly, to which both responded that Howe "pointed a gun at D.H.'s

head and threatened to shoot her." CP at 36. D.H. stated that Howe said "something to

the effect of I'll put a bullet in your head too." CP at 36. D.H. reiterated this story when

she was later interviewed by APS. Accordingly, based on these unchallenged findings,

substantial evidence supports the finding that Howe pointed a gun at D.H.

11

Howe contends that the evidence was conflicting and that the ALJ should not have found D.H.'s prior statements more credible than her later statements, which omitted Howe pointing a gun at her. While it is true that D.H.'s description of the events changed over time, this court "[w]ill not substitute our judgment for that of the ALJ regarding credibility of witnesses or the weight of conflicting evidence." *Swanson*, 193 Wn. App. at 816.

Howe also argues that if the ALJ had considered D.H.'s statements immediately after the incident as unreliable, as the superior court did, then there would be no substantial evidence in the record to support Howe pointing a gun at D.H. However, this court reviews "the Board's decision, not the decision of the superior court." *Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 142 Wn.2d at 553; *see also Pac. Coast Shredding*, *LLC v. Port of Vancouver, USA*, 14 Wn. App. 2d 484, 501, 471 P.3d 934 (2020) (Generally we "'treat any findings of fact or conclusions of law the superior court made as surplusage.'") (quoting *Morawek v. City of Bonney Lake*, 184 Wn. App. 487, 491, 337 P.3d 1097 (2014)).

Finally, for the first time in his reply brief, Howe appears to challenge several of the ALJ's findings. A challenge raised for the first time in a reply brief is raised too late to warrant consideration. *See Bergerson v. Zurbano*, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018) ("Generally, a court will not review an issue raised and argued for the first time in a reply brief."). Even if we were to consider these new arguments, the challenges

12

point to evidence that we should consider "unreliable," which essentially asks this court to reweigh evidence. However, we "defer to the agency's broad discretion in weighing expert testimony" and "do not weigh evidence or judge witness credibility" when evaluating substantial evidence. *Pac. Coast Shredding*, *LLC*, 14 Wn. App. 2d at 501. And as discussed, the evidence was sufficient to support the challenged finding that Howe pointed a gun at D.H.

We affirm the Board's finding of mental abuse of a vulnerable adult (and reverse the superior court's finding to the contrary). The ALJ concluded that Howe mentally abused D.H. after finding that he pointed a gun at her. There is substantial evidence to support the finding and the finding supports the conclusion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

I CONCUR:

_____
Cooney, J.

13

No. 40201-1-III

LAWRENCE-BERREY, C.J. (concurring) — I agree there is substantial evidence to support the Department of Social and Health Services (DSHS) Board of Appeal's (Board's) finding that Tommy Howe abused his adult daughter, D.H., by pointing a firearm at her. "Substantial evidence" is an incredibly low evidentiary standard of review. It can even be met if every reviewing judge disagrees with the Board's finding of abuse.

Because DSHS has met this incredibly low evidentiary standard, we have no discretion but to affirm. I write separately because DSHS does have discretion, and I urge it to exercise its discretion in a reasonable manner.

DSHS must not lose sight of the fact that D.H. is incapacitated and needs an appropriate person to care for her needs and safety. The record supports the notion that, despite the November 27, 2020 incident, Mr. Howe may be the best person to care for D.H. Mr. Howe may have pointed the gun at his daughter to prevent a scuffle for the gun, a scuffle that may have forced Mr. Howe to shoot Andrew. If so, Mr. Howe's action was justified. I have little doubt that this, perhaps an equitable consideration, was why the trial court reversed the Board's factual finding.

No. 40201-1-III
*Howe v. DSHS* (concurring)


 Mr. Howe's years of caring for D.H. despite her poor decisions, coupled both with his determination in challenging the Board's finding and his daughter recanting her statements, provide support for the notion that Mr. Howe is a suitable caretaker for his daughter.  If so, DSHS would be justified in dismissing this action.


_____
Lawrence-Berrey, C.J.